This appeal is from a modification of a child custody decree. In a previous divorce proceeding, the mother had been awarded the custody of the parties' five year old son. The father, subsequent to the divorce decree, petitioned the court to award him custody of the child on the ground that the mother, due to her conduct, was no longer a fit person to have custody of the child. The trial court, after hearing the evidence in support of the petition, awarded custody of the child to the father and gave reasonable visitation rights to the mother. The mother appeals.
The rule governing child custody modification cases was correctly set out in Ponder v. Ponder, 50 Ala. App. 27,276 So.2d 613, and reiterated in Ford v. Ford, 293 Ala. 743,310 So.2d 234, and is as follows:
 "`It is axiomatic to review of decrees of modification as to custody of children that such a decree should be entered only upon proof of a material change of circumstances of the parties since the prior decree, which change of circumstances is such as to affect the welfare and best interest of the child or children involved. Greene v. Greene, 249 Ala. 155, 30 So.2d 444. A prior decree of custody is assumed correct and in the absence of proof of changed conditions or other substantial reason for its modification it should not be disturbed. The burden of showing a change of circumstances which affects the best interest and welfare of the children is upon the petitioner. Anonymous v. Anonymous, 277 Ala. 634, 173 So.2d 797; Sparks v. McGraw, 270 Ala. 159, 117 So.2d 372.'"
In her brief on appeal, the mother says that the evidence submitted in support of the modification petition fails to support a finding of a material change of circumstances since the divorce decree, and that the trial court thereby erred to her prejudice in so finding.
Where the trial court modifies a child custody decree after hearing ore tenus, its findings will not be reversed on *Page 828 
appeal unless they be plainly and palpably wrong. Dorminy v.Dorminy, 51 Ala. App. 70, 282 So.2d 686.
As applied to child custody, the "changed circumstance doctrine" is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.
In the case before us the evidence tends to show that at the time of the modification proceedings, the environment provided the child by its then custodial parent was unstable and deteriorating due to that parent's impulsive behavior. The trial court did not err in determining that such mercurial changes materially affected the child and called for court action.
The parties to this suit were divorced in August 1974, and the mother was awarded custody of their only child. At this time she was living in the Meadows apartments in Montgomery and working at the local South Central Bell office.
On September 30, 1975 she took her son out of the Greengate School — he was, we think, in the first grade — left her employment without notice, and departed on an extended trip with a married man. She was away for about six weeks and visited in California, Hawaii, Australia and Denver, Colorado. She admitted to having sexual relations with the man during the trip, but insisted that it was not in the presence of the child. There was evidence that her traveling companion was an alcoholic.
During the time that she was in Denver, Colorado, the mother enrolled her child in an elementary school. The child stayed in school there for two weeks before he and his mother returned to Montgomery.
The father, after learning that the mother and child were in Montgomery, which was the week before Thanksgiving 1975, took physical custody of the child and has kept him since that time. The mother has had possession of the child for one weekend since November 1975. On this occasion, the father testified that the mother called and said the child had enjoyed himself, but wanted his father to come for him. The father did go for him and the mother voluntarily gave the child to the father. The mother denied that the child asked to go back to his father's house.
The father also stated that since the mother's return from her trip they had agreed that he would keep the child but the mother would not give up legal custody. They also agreed that the father would not be required to make child support payments, but in lieu thereof he would pay $100.00 per month as alimony.
During the time the father has had physical custody of the child, they have been living with his parents in Wetumpka. Also living in the house is the father's eleven year old sister. The father has enrolled the child in a private elementary school nearby. The child attends school from 8:00 a.m. to 3:00 p.m. five days a week and travels to and from school by bus. The grandfather and sister are at home in the afternoons and look after the child until around five or six p.m. when the father and grandmother arrive at the house. The father said that his sister and the child get along well together and she helps the child with his school work. The father plans to marry soon. *Page 829 
The mother's testimony showed that she was unemployed and living with her mother and stepfather in a mobile home located in a mobile home park managed by her stepfather. The maternal grandmother is a nurse and works regularly; however the stepfather is at home most of the time.
The evidence also reflected that the mother had attempted suicide prior to the divorce. She said: "I took an overdose that time to go to sleep again to get away from Lee." (Lee is her ex-husband).
On September 15 or 16, 1975, which was after the divorce, the father says that the mother attempted suicide again by taking an overdose of sleeping pills. He testified that she told him she did not want to live, she wanted out. He also said that she had made this statement many times before. The mother denied attemping suicide but admitted taking two sleeping pills so that she could go to sleep and get away from her former husband's harassment and because she was lonely.
It is apparent to us that the trial court considered that the circumstances of the parties had materially changed since the divorce decree, especially in reference to the impulsive and possibly unstable behavior of the mother, and that the best interests of the child would not be served by remaining in the custody of its mother. After carefully reviewing the evidence heard by the trial court, the pertinent parts of which have been set out above, we cannot say that the trial court was palpably wrong in changing custody of the child from the mother to the father. The environment provided by the father may fall short of the ideal, but it appears to have an aspect of permanence and to be far less subject to abrupt, unplanned change. We therefore affirm the judgment of the trial court.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.