BRADLEY, Judge.
This is a child custody case.
Curtis Walter Merriman and Wilda Faye Merriman, presently Wilda Faye Carr, were *1284 divorced on March 7, 1980 by a decree which awarded custody of the couple’s one child, Misty Maelin Merriman, to the father and gave visitation rights to the mother. The action which gave rise to the instant appeal began on April 20, 1981 when the wife filed a petition for modification in which she claimed that her former husband had failed to cooperate with her concerning visitation rights. She further sought a temporary restraining order to prevent him from taking the child out of the state, assigning as her reason threats on his part to do so. The court issued the temporary restraining order and set a hearing date on May 4, 1981. When Merriman failed to appear on the date set, he was found to be in contempt. After a subsequent ore tenus hearing, the trial court issued an order which vested legal custody of the child in Mrs. Carr and physical care and custody in Mrs. Carr’s mother, the child’s maternal grandmother.
On August 20, 1982 Merriman filed a petition to modify in which he sought to regain custody of the child. He claimed that he had not received service of the temporary restraining order and the notice to appear at the May 4, 1981 hearing because he had moved to Dothan. In response to his petition, the trial court abated the contempt citation and allowed the child to remain in Merriman’s custody pending a final determination of the matter.
After a second ore tenus hearing, the trial court found that Merriman took the child to Florida in violation of the temporary restraining order and that service of process had been properly made. He was ordered to serve four days in the Morgan County jail. The court further found that Merriman had not met his burden of proving a material change in circumstances since the September 28,1981 decree and left standing that portion of the earlier decree which awarded legal custody of the child to the mother and physical custody to the maternal grandmother. Merriman has appealed to this court from the trial court’s order.
The first issue presented for our review by Merriman concerns the propriety of the September 28, 1981 decree. He specifically asserts that this order should be set aside for lack of personal jurisdiction because he was never served with the temporary restraining order and notice of the hearing on his wife’s petition to modify. He claims that he presented evidence of his absence from Morgan County on the date of service shown on the return and that he had moved to Dothan with his family on April 21,1981. This move, he says, was made at a time in which there was no court order to prevent his moving the child and was made necessary because of problems with his former wife and a need to find better employment. In attacking the decree Merriman urges us to find that the rule which requires that a party seeking modification of a prior decree bears the burden of proving changed circumstances since the date of the rendition of the last modification does not apply in the instant case because the September 28, 1981 decree was void for lack of personal jurisdiction. See Wood v. Wood, 333 So.2d 826 (Ala.Civ.App.1976). If this decree was void for lack of personal jurisdiction, Merri-man claims that the trial court improperly limited its consideration to proof of changed conditions between the September 28, 1981 decree and the hearing on his petition.
A sheriff’s return of service is surrounded by every presumption of correct ness. The party seeking to challenge such a return bears a heavy burden of proof in his attempt to overturn the presumption. AAA Sewing Machine Co. v. Shelby Finance Co., 384 So.2d 126 (Ala.Civ.App.1980). See also Nolan v. Nolan, 429 So.2d 596 (Ala.Civ.App.1982). In meeting this burden of proof, the party seeking to challenge the return of service may not show the impropriety by his own testimony alone but must present some corroborating evidence that service has not been properly made. Raine v. First Western Bank, 362 So.2d 846 (Ala.1978).
Merriman urges us to find that he has met his burden of proving that service of process was improperly made. He points out that he testified that he had moved from Morgan County to Dothan on April 21, *1285 1981 and that the sheriffs return was dated April 24,1981. In support of his testimony, Merriman introduced a rental receipt for a moving truck and also called his present wife to testify that he was no longer in Morgan County on the date of service. We must disagree and find that Merriman has not met the burden of attacking the presumption of correctness attached to the sheriffs return. See AAA Sewing Machine Co. v. Shelby Finance Co., supra. This decision on our part is necessitated by the ore tenus rule which requires that a trial court’s determination on the issue of service of process be surrounded by every presumption of correctness unless the record reveals gross abuse of discretion or palpable error. Modernage Homes v. Wooldridge, 55 Ala.App. 68, 313 So.2d 190 (Ala.Civ.App.1975). Merriman urges us to find that he attempted to offer evidence from the deputy sheriff who made the service and that this testimony was improperly excluded by the trial court. The record shows, however, that he did not offer such evidence during his case in chief. Instead, he waited until the end of the trial to make his proffer, and it was properly excluded. The only evidence tending to favor Merriman’s position was the uncorroborated testimony of Merriman and his present wife and the rental receipt for the moving truck. Thus, the trial court was free to conclude on the basis of evidence before it that service was made on Merri-man. Its decision will not be disturbed in this court.
Merriman next contends that the trial court erred to reversal in refusing to modify its September 28, 1981 custody order. His argument is premised on the contention that certain material facts which were not available to the trial court would have led to a different conclusion on its part and also should have supported his later petition to modify. The thrust of Merriman’s argument comes from our decision in Nelson v. Nelson, 354 So.2d 1142 (Ala.Civ.App.), cert. denied, 354 So.2d 1144 (Ala.1978), in which we said that a previous child custody order may be modified on a showing of changed circumstances or a demonstration that there were material facts which were not disclosed to the trial court at the time of its earlier order.
When the trial court held its earlier hearing from which the change in custody was ordered, Merriman was absent and, thus, unable to present evidence as to why he should have been allowed to retain custody of his daughter. This absence, we note, was caused by his move from the Morgan County area in violation of the temporary restraining order. At the September 28, 1981 hearing, the trial court took testimony from Mrs. Carr and her mother and decided on the basis of facts before it that custody should be removed from Merriman and split between the mother and the maternal grandmother. Nothing, other than Merri-man’s own absence from Morgan County in violation of the temporary restraining order, prevented him from being present at the hearing and coming forward with evidence as to why he should be allowed to retain custody of his daughter. For this reason we cannot say that our holding in Nelson v. Nelson, supra, is controlling in the instant case, and we must find that the trial court acted properly in refusing to modify its order on the basis of material undisclosed facts.
The final issue raised by Merriman in his brief concerns the trial court’s failure to find that he had met his burden of proving changed circumstances between the time of the September 28,1981 decree and the hearing in question. He claims that with the evidence before it the trial court committed reversible error by failing to modify its earlier order. After a careful examination of the record, we find that we must agree with Merriman’s contention and reverse the trial court’s decision.
Our review of this appeal and our ultimate decision to reverse the trial court’s findings are made despite the fact that such a decision is to be accorded every presumption of correctness and is only to be reversed when we find that it is unsupported by the evidence. See Williams v. Williams, 402 So.2d 1029 (Ala.Civ.App.1981). We find, however, that reversal is mandated *1286 here because the trial court’s order which left custody in the wife and maternal grandmother was unsupported by the testimony presented. We further find that Merriman has met his burden of proving changed circumstances since the rendition of the earlier order.
When the trial court issued its September 28, 1981 order, it based the change in custody to the mother and maternal grandmother on two factors. First, it found that the mother was living in the home of the maternal grandmother and that she was working at the time. In so finding the court apparently concluded that a degree of stability had entered the mother’s life and that she was able to participate in raising her daughter. Second, it was found that the maternal grandmother was a suitable person to have custody of the child and that she was willing to take her into her home.
Evidence on the record indicates that Mrs. Carr has not had a stable residence since the rendition of the September 28, 1981 decree. A part of this instability can be attributed to her efforts to find her daughter whom she believed to be in Florida. A close reading of the record reveals that the wife visited with her daughter briefly after the child had been returned to Alabama. She then chose to leave Alabama and return to Florida. When questioned about this move, Mrs. Carr stated that her second trip to Florida was necessitated by legal matters connected with the custody hearing. Despite this statement there is other evidence through her own testimony and the testimony of other witnesses to indicate that her second trip was motivated by personal considerations and was indication of her generally unstable life-style. Mrs. Carr admitted that while she was in Florida on her second trip she engaged in a relationship with a man who was her employer. This relationship was initiated and continued by her at a time in which she was married to her present husband. There is further evidence to indicate that her residence has changed at other times since the earlier custody decree.
Taken together, the facts concerning Mrs. Carr’s frequent change of residence and the way in which she has handled her relationships since the time of the September 28, 1981 decree show a degree of instability in her life-style which would make her unsuitable for the responsibility of raising a young child. They also indicate that there has been a change of circumstances since the time of the earlier order. As we have pointed out, the court, in its September 28, 1981 decree, expressly based a part of its decision on the fact that Mrs. Carr was living with her mother. This finding points to the fact that the trial court believed that she had become stable enough to have legal custody of her daughter. However, the record at the second hearing shows that these circumstances had changed and that Mrs. Carr was not sufficiently mature to participate in raising her child.
As we have previously stated, a part of the trial court’s decision on September 28, 1981 to take custody from the father was motivated by the maternal grandmother’s desire and ability to assist in caring for the child. During the first hearing she was unequivocal in stating that she could take the child into her home and see that her needs were adequately met. The maternal grandmother continued at the second hearing to express her desire to care for her granddaughter. However, when asked at the second hearing whether she could assure the court that she would continue to be able to be responsible for the child, she candidly replied that at the age of sixty-one and giving due consideration to the fact that she worked at night, she would not give complete assurance that she would be able to meet the needs of a young child. Considering the mother’s unstable life-style and the grandmother’s reluctance to give assurance that she would be able to care for the child, we must conclude that the trial court erred to reversal in refusing to modify its September 28, 1981 order and reinstate the father as custodian of his daughter. '
Our decision that the trial court abused its discretion is strengthened by testimony *1287 from Merriman and his present wife. He indicated to the trial court that he had cared for the child since her birth. His present wife stated that she had known and cared for the daughter since the child was one year old. Both testified that they loved her and wished to have her in their home. Moreover, the evidence reveals that Merri-man has a good income and that he was providing his family with an ample house in the country in which to live. Merriman and his present wife testified that they had engaged in teaching the daughter the letters of the alphabet, that they were involved in religious activities with the child, and that they had plans for her future education. Thus, the record is replete with evidence that the best interests of the child would be served by placing custody in the father.
For the foregoing reasons we find that the trial court erred to reversal by refusing to modify its September 28, 1981 order and place custody of the child in the father. Its decree is therefore reversed and the cause is remanded for entry of judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., concurs.
HOLMES, J., concurs in the result.