L. CHARLES WRIGHT, Retired Appellate Judge.
The parties were divorced in 1990. Custody of the parties’ two minor children was awarded to the mother. In 1995 the father filed a petition, requesting that he be awarded custody. At the time of the hearing, the parties’ daughter was nine years of age and their son was seven years of age. Following oral proceedings, the trial court awarded custody to the father. The mother appeals.
In its order awarding custody of the children to the father, the trial court did not state which standard it found to be applicable, and it made no specific findings of fact. Since the facts of this case present a classic Ex parte McLendon, 455 So.2d 863 (Ala. 1984), scenario, we presume that the trial court correctly applied that standard. Furthermore, in the absence of specific findings of fact, appellate courts will presume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996).
When there is a prior custody decree, the parent seeking the change in custody has a very stringent burden of proof. King v. King, 636 So.2d 1249 (Ala.Civ.App.1994). Merely showing that a material change in circumstances has occurred since the last decree is not sufficient. Although the best interests of the child are paramount, the petitioner must show that a change in custody will materially promote the child’s best interests and that the benefits of the requested change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon; Whitfield v. Whitfield, 570 So.2d 700 (Ala.Civ.App.1990). The party seeking modification must prove that the “material changes affecting the child’s welfare since the most recent decree demonstrate that custody should be disturbed to promote the child’s best interests.” Wood v. Wood, 333 So.2d 826 (Ala.Civ.App.1976).
Although the trial court is afforded great discretion in determining matters of child custody, its judgment is subject to reversal if shown to be plainly and palpably wrong. King.
The father’s request that he be granted custody of the children was based primarily on the mother’s alleged addiction to prescription drugs. The father presented evidence that the mother had procured prescription medication from 26 different doctors in the 3 years preceding the hearing. The father entered into evidence the deposition of Dr. Joseph Thomas, a psychiatrist. Dr. Thomas reviewed the lists of medications that the mother was taking. He was not her treating physician and, in fact, had never met the mother. Based on the lists of medications, he could not conclusively state that *471 the mother was addicted to prescription medication.
Dr. Vern Harpole, the mother’s treating family practitioner, testified on the mother’s behalf. Dr. Harpole saw the mother approximately four times in the six months preceding the hearing. He testified that he was treating her for anxiety, due primarily to the custody issue. After reviewing the lists of medications presented by the father and the results of the mother’s records regarding her blood screening for the detection of drug abuse, Dr. Harpole opined that all of the mother’s laboratory tests were normal and that there was nothing to indicate that the mother was abusing drugs. He explicitly stated that the lists of medications that the father presented for the doctor’s review did not appear to show excessive use. He reached this conclusion based on the mother’s physical and mental history.
The record reflects that in November 1992 the mother suffered a grand mal seizure. As a result, she was required to take prescription medication. In February 1994 she was involved in an automobile accident, which caused her to undergo several surgeries and ultimately cost her the loss of five percent of her liver. Following this accident, she spent 14 days in the University of South Alabama Hospital. She saw numerous doctors during this period.
In March 1995 she was involved in another vehicular mishap when a truck that she was following lost one of the pallets it was carrying. She suffered a herniated disc in her neck, which required the administration of prescription drugs and other medical treatment.
The father also asserted that the mother was involved in immoral behavior, involving living with an unrelated man in the presence of her children. The father failed to present any “credible” evidence to substantiate this claim. Furthermore, even if the allegations were proven, the father failed to show that the mother’s conduct had a detrimental effect on the children. Smith v. Smith, 586 So.2d 916 (Ala.Civ.App.1991).
The trial court appointed an expert, Dr. Nancy DeVaney, a licensed clinical social worker and registered custody evaluator, to perform a custody evaluation. Dr. DeVaney administered various tests to the parties, interviewed the parties and the children, and interviewed others familiar with the parties and the children. Dr. DeVaney basically concluded that the children were at risk in their present environment. She stated, “I believe the children are at risk because based on the information that I have available to me, I think there’s extensive drug use.” She continued, “I’m basing that on the fact that [the mother has] seen 26 different doctors in a three-year period for various medical problems.” Dr. DeVaney’s report also contained the following observations: “All three adults [the mother, the father, and the father’s current wife] appear to be fairly well-differentiated from [the children] and do not appear to be raising them to meet their own needs.” “Information obtained through clinical interviews and from [a test] confirm [the mother’s, the father’s, and the father’s current wife’s] knowledge of [the children’s] likes and dislikes.... ” “In terms of behavior, both parents have voiced acceptable expectations of [the children].” “Each of the three adults exhibited an enthusiastic, warm, and interested voice quality with congruent facial features while communicating with the children in my presence.”
Dr. Cheryl Rose, a counselor, and the director of the Helping Children Cope with Divorce program, testified that she first met the mother in 1986. At that time Dr. Rose was a counselor with the Family Counseling Center. The mother contacted the center after experiencing abusive episodes by the father. The mother and Dr. Rose have maintained a relationship since that time. Dr. Rose had an opportunity to review Dr. DeVaney’s report and disagreed with Dr. DeVaney’s findings. Dr. Rose opined that the mother did not have a problem with drugs, that the mother was a good and fit parent, and that the children should stay with the mother. Dr. Rose’s major concern regarding the children was their interaction with the father. Dr. Rose testified that both children told her that while visiting their father, they had experienced their father abusing his current wife. When questioned as to whether she thought the children were *472 “at risk,” Dr. Rose responded, “The only time that I would say they might be at risk is if there’s continued physical abuse at their father’s home.”
At the time of the hearing, the mother was operating a domiciliary for the elderly in her home. The mother’s home was situated so that the elderly patients had a wing of their own. The mother’s family had been in this type business for approximately 30 years. The mother presented various character witnesses. All agreed that she was a good mother.
The father lives at Dauphin Island and owns a bar. He testified that he was a better custodial parent for the children because, he said, he now has a stable home, he has no drug problem, he has never failed a drug test, and his current wife, who teaches Sunday School, could help him provide a healthy home atmosphere for the children. He testified that the bar was mostly a weekend business and that he would have ample time to spend with his children.
The father’s current wife testified that she has never been physically abused by the father. The current wife also testified concerning the conflicts the parties had regarding the children. She testified that the mother scratched her face on one occasion.
The father called Steve Green, his probation officer, as a character witness. In 1983 the father was sentenced to 12 years in the penitentiary for a drug offense. He spent five years in the penitentiary and the remainder on probation. His sentence was completed in March 1995. The probation officer testified that he never experienced any problems with the father.
As can be seen from the preceding text, the record contains extensive testimony, much of which was disputed, concerning the respective lifestyles of the mother and the father. The record, however, discloses no disputed evidence concerning the dispositions of the children.
Dr. DeVaney testified that the children appeared to be functioning quite well. She found them to be attractive, polite, and well behaved. They had pleasant dispositions, seemed to be highly resilient, maintained average grades in school, and were involved in dance and karate. She found that the children seemed to be bonded to both parents and did not want to be placed in the position of choosing one over the other. She determined that the children were experiencing situational stress.
Dr. Rose testified that the children appeared happy and well cared for. She found them to be “pretty well adjusted.” The mother had related to her the concerns she had with her son’s behavior. The mother was concerned because she saw a difference in her son’s behavior after he returned from visits with the father. The mother related to Dr. Rose that her son would become very agitated, angry, and destructive at times.
The father testified that “both of those kids are very well-mannered and they really don’t need discipline.” The father’s current wife agreed that the children were exceptionally well behaved.
The trial court met with the children in camera. There was nothing remarkable about the children’s testimony. As Dr. De-Vaney observed, it appears from their testimony that they did not want to be in a position to choose between their mother and father. The children were not asked to make a choice, and there was no indication from their testimony that they had made that choice. The children indicated that they enjoyed being with both parents.
We are aware that this court is not allowed to reweigh the evidence in a case like this one. Ex parte Bryowsky. However, our thorough and careful review of the record fails to uncover sufficient evidence to support the trial court’s award of custody to the father. It is not the weight of the evidence that concerns this court. It is the lack of evidence.
The father had the burden of showing that the mother’s living arrangement had a detrimental effect on the children and that transferring custody to him would materially promote the best interests of the children. Butts v. Startley, 600 So.2d 310 (Ala.Civ.App.1992). While we are concerned with the allegations regarding the mother’s drug addiction, from the record before us, we cannot say that her alleged addiction has had a *473 detrimental effect on the children. All parties agree that the children are well adjusted, well disciplined, and well cared for. In all, the evidence simply does not justify uprooting the children from their present home and present school environment. Whitfield.
In Ex parte McLendon, our supreme court stated the following:
“Although the best interests of the child are paramount,' this is not the standard to be applied in this case. It is important that [the father] show that the child’s interests are promoted by the change, i.e., that [he] produce evidence to overcome the ‘inherently disruptive effect caused by uprooting the child.’ Wood v. Wood, 33B So.2d at 828.”
In this case we find that the father failed to meet that burden. We find the trial court’s order to be clearly erroneous. Ex parte Bryowsky.
The judgment of the trial court is reversed and set aside.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, J., concur.
THIGPEN, J., concurs in result only.