L. CHARLES WRIGHT, Retired Appellate Judge.
The parties were divorced by the Houston County Circuit Court on September 1, 1994. The divorce judgment incorporated the terms of an agreement entered into between the parties. The agreement provided that the mother would have custody of the parties’ minor son, that the father would have certain visitation rights, and that the father would pay $190 per month child support.
On January 4, 1995, the mother filed a petition for rule nisi, alleging that the father was three months in arrears in his child support obligation and that he had refused to return the son after a scheduled visitation. Following oral proceedings, the trial court entered an order, finding that the father was not in contempt of court, but that he owed two months’ child support. The trial court ordered the father to pay a $380 child support arrearage, a $250 attorney fee, and court costs.
On October 16, 1995, the Department of Human Resources filed a motion to intervene, which the trial court granted. On November 13, 1995, the father filed a petition for rule nisi and to modify, alleging that the mother had refused to allow him to visit the son and seeking custody of the son. On November 15, 1995, the mother filed a petition to modify and for rule nisi, seeking a modification of the father’s visitation privileges to require supervised visitation because of his alcohol abuse. She also requested an increase in child support and asked the trial court to hold the father in contempt of court for failing to pay child support as ordered.
Following oral proceedings, the trial court entered an order on January 31, 1996, finding that a change in custody would not be in the son’s best interests. The trial court ordered the parties to refrain from having any *789 contact with each other and to refrain from using alcohol or drugs while in the presence of the son, or while exercising custody or visitation with the son. The trial court also ordered the mother to refrain from any disorderly conduct toward the father and his friends and increased the father’s child support obligation to $292 per month. On February 1, 1996, the mother filed a post-judgment motion, asserting that the father’s child support obligation was miscalculated and that he should pay $435 per month. On February 6,1996, the trial court amended its January 31, 1996, order to increase the father’s child support obligation to $453 per month.
On April 13,1996, the mother gave birth to a baby girl. On April 23, 1996, the father filed a petition to modify and for rule nisi, seeking to have his child support obligation decreased and to have the mother held in contempt of court for refusing to allow him to visit with the son. On June 12, 1996, the Department, on behalf of the mother, filed a complaint against the father, seeking an adjudication of paternity of the daughter and seeking child support. The next day the mother filed a petition to hold the father in contempt of court for failing to pay his child support obligation.
Following oral proceedings, the trial court entered a judgment, finding that the mother had violated the court’s January 31, 1996, order regarding the prohibition against using alcohol while in the son’s presence and finding that a change in custody would be in the best interests of the son. The trial court also found that the mother was unemployed, that the care required for the medical problems of her daughter made it difficult for the mother to be employed, and that, therefore, the mother would not be required to pay child support. The trial court awarded the mother certain visitation rights. That day, the mother filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial, asserting that she was not served with a copy of the father’s petition for custody and that if she had been served, she would have had legal representation. The trial court granted the mother’s motion for a new trial.
Following oral proceedings, the trial court entered a judgment on October 25, 1996, again finding that the mother had violated the court’s January 31,1996, order regarding the prohibition against using alcohol while in the son’s presence and finding that a change in custody would be in the best interests of the child. The trial court also found that the mother was unemployed, that caring for the daughter’s medical problems made it difficult for the mother to be employed, and that, therefore, the mother would not be required to pay child support. The trial court awarded the mother certain visitation rights.
The mother appeals, contending that the father failed to meet the stringent burden of Ex parte McLendon, 455 So.2d 863 (Ala.1984), and that, therefore, the trial court abused its discretion in changing custody to the father.
When there is a prior custody decree, the parent seeking the change in custody has a very stringent burden of proof. King v. King, 636 So.2d 1249 (Ala.Civ.App.1994). Merely showing that a material change in circumstances has occurred since the last decree is not sufficient. Although the best interests of the child are paramount, the petitioner must show that a change in custody will materially promote the child’s best interests and that the benefits of the requested change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon; Whitfield v. Whitfield, 570 So.2d 700 (Ala.Civ.App.1990). The party seeking a modification must prove that the “material changes affecting the child’s welfare since the most recent decree demonstrate that custody should be disturbed to promote the child’s best interests.” Wood v. Wood, 333 So.2d 826 (Ala.Civ.App.1976).
Although the trial court is afforded great discretion in determining matters of child custody, its judgment is subject to reversal if shown to be plainly and palpably wrong. King.
The record reveals the following pertinent facts: The parties have an antagonistic relationship, which caused the trial court to order them to avoid contact with each other. *790 On May 19, 1996, while the son was visiting his father, the mother came to the father’s house. The mother testified that she had been to the lake and that she had consumed alcohol while there. She admitted that she went to the father’s house, that she was arrested for criminal mischief and harassment, and that she was held in jail for eight hours. The mother testified that the charges against her were subsequently dismissed. She also testified that she has not consumed any alcohol since May 19, 1996, and that she had “turned her life over to God.”
The mother testified that since the son has been with his father, the son has exhibited unusual and inappropriate behavior and that the child exhibited this behavior while at the pediatrician’s office. She testified that he had not exhibited this behavior before living with the father. The son’s pediatrician testified regarding the specifics of the son’s behavior, stating that the mother was shocked and embarrassed by her son’s behavior. The pediatrician testified that the mother disciplined the son several times and that she told the son that his behavior was unacceptable. He also testified that on a subsequent visit, the son continued to exhibit the inappropriate behavior. The pediatrician testified that he reported the child’s behavior to the Department of Human Resources, because the child’s behavior was abnormal. He also contacted the Child Advocacy Center about the son’s behavior and spoke with several individuals regarding the specifics of the son’s behavior. The pediatrician further testified that the mother’s daughter has an unusual metabolic disorder and that, because she cannot fight off infection or cope with a routine illness like most children, he recommended that the daughter not be placed in daycare. The doctor testified that the mother had done everything that he had asked her to do and that she had educated herself about the daughter’s disorder.
Additionally, a babysitter employed by the father testified that she had seen the father intoxicated and had seen the father smoking marijuana after January 31, 1996. She also testified that sometimes the father would leave his son with her overnight so that he could go out to bars.
The father testified that on May 19, 1996, at approximately 11:00 p.m., the mother and a friend came to his house. He stated that they were cursing and were telling his wife that they had caught him with another woman. He testified that the son was asleep and that, because the mother was drunk, he refused to let her take the son. The father testified that he and the mother got into an altercation, that the mother slapped him, and that he pushed the mother.
The father testified that the son should stay with him because the son had learned his ABCs and because the mother is not a good mother. The father admitted that he had been arrested for possession of marijuana in June 1996 but that the case had been dropped. He also admitted that he had two DUI convictions.
After carefully reviewing the record, we conclude that the father failed to meet the stringent requirements of Ex parte McLendon. The judgment of the trial court is reversed and this cause is remanded for the entry of a judgment consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
All the judges concur.