MURDOCK, Judge.
This is a child-custody-modification case. Janet S. Phillips Whitehead, the mother, appeals from a judgment of the Coosa Circuit Court awarding custody of the parties’ three children to Gary M. Phillips, the father.
The parties were divorced in December 1997. Pursuant to the divorce judgment, the mother was awarded custody of their three children, two sons and a daughter. In March 2002, the mother filed a “Petition to Modify and [for a] Rule Nisi” alleging that there had been a change of the father’s financial circumstances and requesting that the trial court increase the father’s child-support obligation. The petition also requested that the father be held in contempt for an arrearage on his child-support obligation and that he be required to pay the arrearage, plus interest. The father filed a motion to dismiss the mother’s petition. He also filed a counterclaim against the mother, alleging that a material change in circumstances had occurred since the last custody order and that he should be awarded custody of the children.
The trial court held a hearing on the parties’ claims in September 2002. At the time of the hearing, the parties’ sons were approximately 17 years old and 14 years old, and their daughter was 12 years old. After receiving documentary evidence and ore tenus testimony from the mother and the father, the trial court entered a judgment denying the mother’s “petitions for modification of child support and [for] a rule nisi” and awarding the father custody of the children. The trial court awarded the mother visitation. As to the custody award, the trial court made the following findings:
“The Court finds overwhelming evidence that since the parties’ divorce on December 3, 1997, the father has exhibited extraordinary love and fatherly support for his children while living 600 miles from them. The father has only missed one visitation weekend in Alabama with his children since his divorce. The father has provided most, if not all, of the financial support for his children’s schooling, health and ordinary living expenses.
“The father has, through extraordinary work habits, achieved a standard of living that would allow his children to have separate bedrooms in his new home while at the same time being exposed to excellent educational opportunities and growth that they would not have living in Coosa County, Alabama.
“The evidence indicates the mother’s lifestyle is characterized by an indifference to the children’s educational growth, health and social well-being. In contrast to the father’s stable and successful employment, the mother has at best had a shaky work record. The example she set in her home for her children is not conducive to their health and emotional well-being. Five children were sharing two bedrooms in her mobile home. The 12 year old daughter *175 had been sleeping in the same room with a teenage brother and two stepbrothers. This does not exhibit a stable home environment for her children. The mother smoking while in the presence of the children shows her indifference to their health. The evidence also clearly showed that the mother exhibited an indifference to the children’s ability to have normal communications with their father who tried to call them every night from 600 miles away.
“The mother being arrested and charged with shoplifting causing her to spend the weekend in jail without caring for her children is further evidence of her inability to care for her children. The evidence showed that the children learned of this incident from other school children.”
The mother filed a postjudgment motion requesting that the trial court either amend its judgment or grant her a new trial. In her postjudgment motion, the mother alleged that the evidence did not support the trial court’s modification of custody. The mother also alleged that the trial court had “failed to consider any evidence or take testimony from the children of the marriage even though the children were all of an age that required the Court to consider their testimony”; she attached to her postjudgment motion a sworn affidavit from each child and a sworn affidavit from a teacher in the Coosa County School System in which the children attend school and who is familiar with the children.[1] The mother’s postjudgment motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P. The mother appeals.
On appeal, the mother argues that the trial court’s judgment is due to be reversed because the trial court did not receive any testimony from the parties’ children. She also argues that the trial court’s findings were not supported by the evidence and that the father failed to present sufficient evidence to satisfy his burden of proof for a modification of custody under Ex parte McLendon, 455 So.2d 863 (Ala.1984).
As to the failure of the trial court to receive any testimony from the children at the September 2002 hearing, the mother did not attempt to call the children as witnesses at trial. “This Court cannot put a trial court in error for failing to consider evidence or accept arguments that, according to the record, were not presented to it.” Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990).[2]
The father has filed a motion to strike those portions of the mother’s appellate brief that refer to information contained in the affidavits from the children and the teacher filed in support of the mother’s postjudgment motion. As we have stated before, “[t]his court in this instance, as in all instances, only considers relevant matters as shown by the record,” Roussel v. Payne, 352 So.2d 1364, 1370 *176 (Ala.Civ.App.1977). We have not considered the affidavits filed in support of the mother’s postjudgment motion in rendering our opinion in this case.
The mother next argues that the trial court’s findings were not supported by the evidence and that the father failed to present sufficient evidence to satisfy his burden of proof for a modification of custody under Ex parte McLendon, 455 So.2d 863. A judgment of a trial court based on ore tenus evidence is presumed correct. Anderson v. Lee, 621 So.2d 1305 (Ala.1993). An appellate court will not disturb the trial court’s conclusions on issues of fact unless the conclusions are clearly erroneous and against the great weight of the evidence. See Raidt v. Crane, 342 So.2d 358 (Ala.1977). The ore tenus rule recognizes that the trial court is better able than the appellate court to determine the credibility of witnesses. Based upon the trial court’s unique position to personally observe the parties and witnesses, it has the discretion of accepting or rejecting testimony and of giving appropriate weight to testimony. See James v. James, 532 So.2d 1031 (Ala.Civ.App.1988).
In Ex parte McLendon, 455 So.2d 863, our Supreme Court recognized that where there has been a voluntary forfeiture of custody or a judgment awarding custody of a child and the custodian has “ ‘acted upon’ ” his or her newfound custody “ ‘to the manifest interest and welfare of the child, the parent [seeking custody] will not be permitted to reclaim the custody of the child, unless [he or she] can show that a change of the custody will materially promote [the] child’s welfare.’ ” 455 So.2d at 865 (quoting Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947)). The Supreme Court explained this material-promotion requirement, which is often referred to as the “McLendon standard” or the “McLendon presumption,” as
“ ‘a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child’s healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court’s satisfaction that material changes affecting the child’s welfare since the most recent decree demonstrate that custody should be disturbed to promote the child’s best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child.’ ”
Ex parte McLendon, 455 So.2d at 865-66 (quoting Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App.1976)). It is not enough that the parent seeking custody show that he or she has reformed his or her lifestyle or improved his or her financial position; the parent seeking custody must show that a change in custody would materially promote the best interests and welfare of the child. See Ex parte McLendon, 455 So.2d at 866.
The mother testified that since the entry of the last custody order, she had stopped working. She stated that she was “under a doctor’s care” and that she had “filed for disability because she had degenerative bone disease” in her back. When asked about her employment prospects, the mother responded that “[n]o one’s going to hire me if I can’t stand or sit lengths of time” and that the inability to stand or “sit for lengths of time” were symptoms that she suffered from. However, there was no evidence that the mother’s physical limitations had detrimentally affected the care of her children.
At the time of the hearing, the mother received $900 per month as child support from the father, and, apparently, she had *177 no other source of income, although her husband was employed. She stated that, based on her income and her husband’s income, the children qualified for and received “reduced lunches.” The father did not approve of his children receiving “reduced lunches.” However, there was no evidence that the children had not received adequate nutrition or that receiving “reduced lunches” had detrimentally affected them.
When asked what the children wanted in regard to custody, the mother testified, without objection by the father, that “[t]hey want us to have equal time together when they are out of school or vacation time.” She also testified that the children had not “gotten in any kind of trouble,” that they were “straight A” students, and that they were on the honor role. The father likewise testified that the children performed well in school and that they always had. Further, the mother stated that she traveled to all of the children’s school activities, practices, and games.
The mother testified that she, her husband, and the parties’ three children resided in a manufactured home that had three bedrooms. She also testified that her husband had two sons, who were 6 years old and 8 years old, and that they stayed with them diming the husband’s “weekly visitation.” She testified that she and her husband had a bedroom, that her daughter had a bedroom to herself, and that the boys shared a bedroom. The mother testified that her parents resided next door to her residence. There was no evidence that the children’s living arrangement with the mother had a detrimental effect on them.
The mother testified that she and her husband smoked in their home, in the presence of the children. However, she stated that none of her children suffered from allergies or had respiratory problems. The father objected to the mother’s smoking in the presence of the children.
The ' mother testified that during the year before the hearing, her telephone service had been “cut off’ for a few days on two or three occasions because she had not paid the bill. The father testified that the mother’s telephone service had been disconnected “probably” half of the time that he had tried to call the children. The father testified that the mother’s telephone-service problems had interfered with his telephone visitation with the children, but he also stated that he called the children almost daily and that he sometimes managed to reach the children at a relative’s home when the mother’s telephone service was disconnected.
The mother admitted that she had been arrested for shoplifting in 1999, but she stated that it was a false arrest and that the charges had been dismissed. She testified that when she got home from her incarceration following the arrest, the children were at school but that other children attending the children’s school had heard about her arrest over the radio and had told her children about the incident. The maternal grandparents had cared for the children while the mother was incarcerated. The mother testified that she and the father had discussed the alleged shoplifting incident and that he was present when the charge against her was dismissed. Although the alleged shoplifting incident occurred in 1999, the father apparently did not complain of it until 2002. There was no evidence that the children had been detrimentally affected by this incident.
The mother testified that the children attended Ray Baptist Church with her approximately two Sundays each month and “every Wednesday night ... if they do not have school homework.” She admitted that she did not insist that the children attend church if they did not want to at *178 tend. The mother also stated that she had no problems with the children, but that when a problem arose they discussed it “one on one.” The father also testified that the children were not “getting in any kind of trouble” and that he and the mother had been “pretty strict” with them. There was no evidence that either party used inappropriate disciplinary procedures.
The father testified that he had resided in Indianapolis, Indiana, since the entry of the divorce judgment and that his gross annual income was approximately $170,957, substantially more than he had been making when the parties divorced. He stated that he was employed as a computer programmer manager. He also stated that, in addition to paying child support, he had paid approximately $21,811 since the entry of the divorce judgment for clothes, educational supplies, activity fees, medical care, and other additional expenses for the children. In addition, the father testified that he and his wife provided court-ordered health insurance for the children. He testified that he did not believe the mother had properly spent the children’s child support, but he offered no evidence as to how the child support might have been misspent.
The father testified that in the divorce judgment he had been awarded visitation with the children every other weekend. The father stated that he had only missed one weekend visitation since the parties had been divorced, despite having to drive 600 miles each way for visitation on most occasions; sometimes the father traveled by air.
The father testified that he and his wife resided in a three-bedroom home, but that they were “in the process of trying to complete a new home” that would have six bedrooms. He stated that his wife had two children, who would each have their own bedroom. The father also testified that, until approximately six months before trial, the parties’ daughter had lived in the bedroom with “the three boys” at the mother’s manufactured home and that his oldest son had a bedroom by himself. However, he acknowledged that the mother had given the daughter a bedroom of her own because she was “getting older for one thing.” It does not appear that the mother’s husband’s two sons resided with him and the mother. Thus, the daughter apparently shared a bedroom with the younger of her two brothers until she was approximately eleven and one-half years old. There was no evidence, however, that anything improper had occurred because of the children’s living arrangement.
As to the children’s educational prospects in Indiana, the father testified:
“Q. You feel like you have a good home for these children to live in?
“A. Yes, sir, I do.
“Q. Good school—
“A. Yes, sir.
“Q. —facilities?
“A. Yes, sir.”
This court recognizes the ore tenus presumption in favor of the trial court’s decision; however, “we are not constrained to affirm a judgment of the trial court when the evidence fails to support the findings upon which that judgment is based.” Sloane v. McQuinn, 836 So.2d 908, 910 (Ala.Civ.App.2002). While it is not disputed that the father is better able to provide financially for the children and that the children would have a more comfortable living arrangement in Indiana, there was no evidence that the children’s current living arrangement had a detrimental effect on them. Further, there was not substantial evidence from which the trial court could conclude that the father would provide the children with “excellent education *179 al opportunities and growth that they would not have living in Coosa County, Alabama.” Likewise, there was not sufficient evidence to support the trial court’s conclusion that the mother had exhibited “an indifference to the children’s educational growth, health and social well-being” or that “the example she set in her home for her children [wa]s not conducive to their health and emotional well-being.”
There is no indication in the record that the mother has failed in her parental duties toward the children. Our review of the record reveals that both parents love the children and each desires to provide them with a loving home. From the evidence, it appears that the children had resided in Alabama at least since the entry of the divorce judgment in December 1997 and that both parties’ extended families lived in Alabama and had been involved in the children’s lives.
From a careful review of the record, we must conclude that the father did not offer substantial evidence tending to show that “[t]he positive good brought about by the modification [of custody would] more than offset the inherently disruptive effect caused by uprooting the children” from their current home, family, friends, school, activities, and familiar surroundings. Given the ages of the children and the lack of evidence offered by the father, we fail to see how the trial court could have concluded that the father met his burden of proof under Ex parte McLendon. Compare Hermsmeier v. McCoy, 591 So.2d 508 (Ala.Civ.App.1991).
The trial court’s judgment awarding custody to the father is reversed, and the cause is remanded to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, J., concurs in the result, with writing, which YATES, P.J., joins.
THOMPSON J., concurs in the result, without writing.
PITTMAN, J., dissents, with writing.

. The mother did not request a hearing in her postjudgment motion. She later filed a "Motion to Shorten Time and Request for Stay” requesting, in part, that her postjudgment motion be set for a hearing. The trial court did not hold a hearing on the mother’s motion to shorten time or on her postjudgment motion. However, the mother has not argued that the trial court erred by failing to hold a hearing on her motions.

. Noting the affidavits attached to her post-judgment motion, the mother alleged in that motion that "[t]he children are all excellent students academically. They are all active in school activities and have demonstrated leadership and healthy school involvement.” The mother offered no explanation for why she failed to call the children as witnesses at trial and made no request that the trial court reopen the trial record for the inclusion of additional evidence.