Rel: December 8, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

## CL-2023-0336

_____

## K.Y.

## v.

## J.S. and T.S.

## Appeal from Marshall Juvenile Court
## (JU-18-172.03)

PER CURIAM.

In 2018, the Marshall Juvenile Court ("the juvenile court") entered a judgment declaring J.G. ("the child") to be dependent and awarding custody of her to her paternal grandparents, J.S. and T.S. ("the paternal grandparents"). In 2021, K.Y. ("the mother") filed a petition seeking

modification of the custody award; the juvenile court denied the mother's petition. The mother did not appeal.

In September 2022, the mother filed a second petition to modify the custody award; in her petition, the mother also requested that the juvenile court hold the paternal grandparents in contempt. After a trial held on November 15, 2022, the juvenile court entered an order denying the mother's petition; its order stated that the mother had not met the burden to modify custody set out in Ex parte McLendon, 455 So. 2d 863 (Ala. 1984). The mother filed a motion seeking reconsideration of the juvenile court's order, which the juvenile court denied, and the mother filed a notice of appeal; that appeal was assigned appeal number CL-2023-0025. Because the juvenile court had not disposed of the mother's claim for contempt, this court dismissed appeal number CL-2023-0025 because it had been taken from a nonfinal judgment. K.Y. v. J.S., (No. CL-2023-0025, Apr. 10, 2023). Following the issuance of this court's certificate of judgment on April 28, 2023, the juvenile court entered an order on May 2, 2023, denying the mother's request to hold the paternal grandparents in contempt. The mother filed a timely notice of appeal.

On appeal, the mother argues that the burden imposed by the standard set out in Ex parte McLendon should not apply to parents in private dependency cases. She argues that the application of the standard set out in Ex parte McLendon to petitions seeking to modify a final dispositional order in a private dependency case results in the near inability of a parent to regain custody of his or her child, regardless of the parent's progress at remediating the issues that initially led to the child's dependency. The mother does not argue that she presented sufficient evidence to meet the standard set out in Ex parte McLendon, and we therefore see no need to set out the evidence presented to the juvenile court.

Indeed, as the mother concedes, the law is well settled:

> "When a juvenile court has entered a judgment awarding custody of a dependent child to a relative, a parent seeking to modify that custody judgment must meet the Ex parte McLendon standard in order to regain custody of the child. J.W. v. C.B., 56 So. 3d 693, 699 (Ala. Civ. App. 2010); M.B. v. S.B., 12 So. 3d 1217, 1219-20 (Ala. Civ. App. 2009); and In re F.W., 681 So. 2d 208 (Ala. Civ. App. 1996)."

P.A. v. L.S., 78 So. 3d 979, 981 (Ala. Civ. App. 2011). See also In re F.W., 681 So. 2d 208, 211 (Ala. Civ. App. 1996) (stating that, after the entry of a judgment awarding custody of a child to a third party, "the [Ex parte]

<u>McLendon</u> standard is activated when the biological parent seeks to regain custody and … a parent's presumptive superior right does not apply"). Our supreme court has also applied the standard set out in <u>Ex parte McLendon</u> to a biological parent's petition for modification of a final dispositional custody order entered in a previous dependency action. <u>See Ex parte D.B.</u>, 255 So. 3d 755, 756 (Ala. 2017) ("[I]t is undisputed that, in order to succeed in her request to modify custody, the mother was required to meet the well settled custody-modification standard set forth in <u>Ex parte McLendon</u> ….").

The mother also concedes that a final dispositional order entered in a dependency action serves to conclude the child's dependency because the child is placed in the custody of a fit and proper custodian. <u>See</u> <u>B.C. v. A.A.</u>, 143 So. 3d 198, 205 (Ala. Civ. App. 2013) ("Once a juvenile court has placed a dependent child into the 'permanent' custody of a proper caregiver, the dependency of the child ends …."); <u>S.P. v. E.T.</u>, 957 So. 2d 1127, 1131 (Ala. Civ. App. 2005) (explaining that, "[u]nder ideal circumstances, … final dispositional orders coincide with the end of the child's dependency, i.e., the child has a proper custodian '<u>and</u>' is no longer 'in need of care or supervision' by persons other than the custodian).

4

However, she complains that, in a private dependency action, in which the parent is not provided with services to aid him or her to correct the conduct or condition that rendered the child dependent, the final dispositional order is often entered fairly quickly, without giving the parent time to rehabilitate. Thus, she posits that "safe guards [sic] should be in place or exceptions should be made to the [Ex parte McLendon] standard in cases where natural parents are beyond the [conclusion of the initial dependency action] but have improved and all parties agree that reunification should still occur."[1]

Although the mother is correct that Ex parte McLendon did not arise out of a dependency action, she fails to recognize that it arose out of a custody judgment awarding custody of a child to grandparents. See Ex parte McLendon, 455 So. 2d at 864. In setting out the custody-modification standard applicable to the facts at issue in Ex parte McLendon, our supreme court first noted the principle that a parent's fundamental right to the custody of his or her child may be overcome by

---

[1]Notably, although the paternal grandmother testified that the goal was to reunite the child with the mother, she testified that she was not sure when that reunification could be accomplished. She did not agree that the child should be returned to the mother's custody at the time of the trial.

5

a judgment awarding custody of that child to a <u>nonparent.</u> <u>Id.</u> at 865 ("The superior right of the mother in this case was cut off by the prior decree awarding custody to the grandparents."). Our supreme court explained that, once a judgment is entered awarding the custody of a child to a nonparent and the child is placed in that person's home, the standard set out in <u>Ex parte McLendon</u> serves as "'a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood.'" <u>Id.</u> (quoting <u>Wood v. Wood,</u> 333 So. 2d 826, 828 (Ala. Civ. App. 1976)). Notably, our supreme court stated that "[w]e cannot overemphasize that 'frequent disruptions [of custody] are to be condemned.'" <u>Id.</u> at 866 (quoting <u>Wood v. Wood,</u> 333 So. 2d at 828).

As the paternal grandparents point out, this court is without authority to create safeguards or exceptions to the application of <u>Ex parte McLendon</u>. <u>See</u> Ala. Code 1975, § 12-3-16 ("The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals ...."); <u>D.E.F. v. L.M.D.,</u> 76 So. 3d 834, 838 (Ala. Civ. App. 2011) (explaining that, "even if we agreed with the father that the <u>Ex parte McLendon</u>

6

standard somehow interferes with his reunification with the child, we may not overrule precedent established by our supreme court"). If safeguards or exceptions should be created, our supreme court is the only court able to create them.[2] Accordingly, we affirm the judgment of the juvenile court denying the mother's petition to modify custody.

AFFIRMED.

Thompson, P.J., and Moore and Hanson, JJ., concur.

Edwards, J., concurs in the result, with opinion, which Fridy, J., joins.

---

[2]Our legislature would also be empowered to create or change the standards applicable to modifications of custody arising out of final dispositional judgments in dependency actions.

EDWARDS, Judge, concurring in the result.

Although I must concur in the affirmance of the judgment entered by the Marshall Juvenile Court ("the juvenile court") because of the precedent set out in the main opinion, including Ex parte McLendon, 455 So. 2d 863 (Ala. 1984), and Ex parte D.B., 255 So. 3d 755 (Ala. 2017), by which this court is bound, see Ala. Code 1975, § 12-3-16, I am disturbed by the application of the standard set out in Ex parte McLendon to custody judgments, like those in this case, entered by a juvenile court at the conclusion of a dependency action. Generally speaking, the McLendon standard imposes a presumption that a change in custody from one custodian to another is "inherently disruptive" and, therefore, requires that the noncustodial party rebut that presumption by establishing that the change in custody would result in a net positive outcome for the child, i.e., that the positive good resulting from a change in custody would "'more than offset'" the presumed "'inherently disruptive effect'" of the change in custody. Ex parte McLendon, 455 So. 2d at 865-66 (quoting Wood v. Wood, 333 So. 2d 826, 828 (Ala. Civ. App. 1976)). Because the standard presumes that a change in custody is inherently disruptive, the party who seeks to modify custody must meet

what this court has consistently described as a "heavy" burden in order to secure a modification of custody. See, e.g., Ex parte Cleghorn, 993 So. 2d 462, 468 (Ala. 2008) ("The burden imposed by the McLendon standard is typically a heavy one, recognizing the importance of stability ...."); Ex parte J.P., 641 So. 2d 276, 279 (Ala. 1994) (referring to the burden of proof under the standard set out in Ex parte McLendon as "heavy"); Rogers v. Rogers, 579 So. 2d 1353, 1354 (Ala. Civ. App. 1991) (same). Purportedly, this is so that a child may enjoy the "valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth." Ex parte McLendon, 455 So. 2d at 865 (quoting Wood, 333 So. 2d at 828).

When applied in the context of a judgment awarding custody of a child to a nonparent at the conclusion of a dependency action, I find application of the standard set out in Ex parte McLendon troubling. The standard does not take into account the child's interest in being, or desire to be, reunited with his or her now fit natural parent. Moreover, the standard proves to be a nearly insurmountable barrier to the restoration of the natural family relationship, which I believe is deserving of more consideration than that given to it when the standard set out in Ex parte

McLendon is applied. Application of the standard set out in Ex parte McLendon in these circumstances not only presumes that the reunification of the child and his or her parent will have a disruptive effect, but also fails to put any value at all upon the positive benefits that may flow from the reunification and preservation of the natural family.

In dependency cases involving the Department of Human Resources ("DHR"), a plan to reunify the family is made so that the parent can attempt to ameliorate the conduct or condition that rendered the child dependent so that the family can be reunited. According to the Alabama Juvenile Justice Act ("the AJJA"), Ala. Code 1975, § 12-15-101 et seq., the stated goals of the juvenile courts include the goals of preserving and strengthening families, Ala. Code 1975, § 12-15-101(b)(1), of "reunit[ing] a child with his or her parent or parents as quickly and as safely as possible … unless reunification is judicially determined not to be in the best interest of the child," Ala. Code 1975, § 12-15-101(b)(3), and of "achiev[ing] the foregoing goals in the least restrictive setting necessary, <u>with a preference at all times for the preservation of the family</u> and the integration of parental accountability and participation in treatment and counseling programs." Ala. Code 1975, § 12-15-101(b)(8)

10

(emphasis added). Furthermore, Ala. Code 1975, § 12-15-101(d), states that the AJJA "shall be liberally construed to the end that each child coming under the jurisdiction of the juvenile court shall receive the care, guidance, and control, <u>preferably in his or her own home</u>, necessary for the welfare of the child and the best interests of the state." (Emphasis added.) DHR must, in most cases, make reasonable efforts to rehabilitate a parent and reunify the family. Ala. Code 1975, § 12-15-312(b). During that process, DHR must establish, if it desires to change the custodial placement of the child or challenge a parent's request for a return of custody, that the child remains dependent. <u>See</u> <u>H.C. v. S.L.</u>, 251 So. 3d 793, 794 (Ala. Civ. App. 2017). When a parent is able to rectify the conduct or condition that gave rise to the child's dependency, the family can and normally should be reunited.

Instead, in contrast to dependency cases resulting in an award of legal custody to DHR, once a dependency action is resolved with an award of legal and physical custody to a third-party custodian and DHR is relieved of supervision, application of the standard set out in <u>Ex parte McLendon</u> to any request by a parent to regain custody renders any success of the rehabilitative steps taken by the parent of almost no value

in the calculation of the child's best interest and prevents the reunification of the natural family. Ex parte D.B., 255 So. 3d 755, 763 (Ala. 2017) (concluding that, although the mother had remedied her drug addiction and could take care of the child as well as the custodial grandparents, the mother had not presented sufficient evidence to support a custody modification because "Ex parte McLendon requires more"). Furthermore, rigid application of the standard set out in Ex parte McLendon does not allow for consideration of the effect of the initial disruption caused by the removal of the child from the custody of his or her natural parent. Based on my experience as a judge on this court, I cannot help but conclude that, in practice, the application of the standard set out in Ex parte McLendon has created a nearly insurmountable barrier to the modification of the custody of a formerly dependent child. As I recall, almost none of the parents who have sought a modification of custody after the entry of a dependency and custody judgment awarding legal and physical custody to a third-party custodian have been able to present evidence establishing that modification would materially promote the child's best interest such that the presumption that the change in custody would detrimentally affect the child could be overcome.

In my opinion, in cases involving a parent who has successfully rehabilitated, the application of the standard set out in <u>Ex parte McLendon</u> to modification actions arising from dependency actions that have concluded with an award of legal and physical custody to a third-party custodian does not serve the purposes of the AJJA. I question whether the standard set out in <u>Ex parte McLendon</u> was intended to be as insurmountable as it has become, especially in light of the fact that, in cases involving dependency, we should have a preference at all times for the preservation of the family. I believe that a better standard would be one permitting juvenile courts considering modification of custody judgments arising from dependency actions to eschew the presumption that a change in custody is inherently disruptive and would instead require the balancing of all of the factors at play, including any disruption caused by the initial removal of the child, the bonds the child has with both the natural parent and the custodian, any disruption that may be caused by removal from the custody of the custodian, and the benefits that may flow from the reunification of the natural family.

Fridy, J., concurs.

13