792 So.2d 1124 (2001)
Andrea PICKETT
v.
Anthony M. PICKETT.
2990879.
Court of Civil Appeals of Alabama.
April 20, 2001.
*1125 Richard L. Chancey of Ezell & Chancey, L.L.P., Phenix City, for appellant.
Connie Cooper, Phenix City, for appellee.
PER CURIAM.
Andrea Pickett (the "mother") and Anthony M. Pickett (the "father") were divorced in 1993. The mother was awarded custody of the parties' minor child. In October 1999, the father filed a petition to modify the custody order. After receiving ore tenus evidence, the trial court entered a judgment that awarded the father custody of the child, subject to the child's finishing the school year at the school he had attended while residing with the mother. The mother appeals.
There is no transcript of the March 21, 2000, hearing on the father's petition to modify custody. However, the trial court approved a statement of the evidence, pursuant to Rule 10(d), Ala. R.App. P. The mother argues that the statement of evidence is incomplete and that using it as a substitute for a transcript in this case violates her "due process rights guaranteed by the state and federal constitutions." The mother cites no authority to support her argument; thus, she has not complied with Rule 28, Ala. R.App. P. However, out of an abundance of caution, we will consider her request that we remand the case for another trial so that a complete transcript may be developed.
*1126 The hearing was taped-recorded, but the recording was inaudible. The mother prepared a proposed statement of the evidence, pursuant to Rule 10(d), Ala. R.App. P. The father objected to the mother's statement of the evidence and filed amendments to that statement. The mother then filed a document entitled a "Final Rule 10(d) Statement of the Evidence," which contained her objections to the father's proposed amendments to her Rule 10(d) statement of the evidence. The trial court issued an approved statement of the evidence that adopted the mother's statement of the evidence as amended by most of the father's objections and amendments. See Rule 10(d), Ala. R.App. P.; Bobo v. Bobo, 585 So.2d 54 (Ala.Civ.App.1991).
The mother disagrees with the trial court's approved statement of the evidence. "On review, [this court] will accept the approved statement of the evidence as true." Mobley v. Turner, 346 So.2d 427, 428 (Ala.1977). No Alabama caselaw addresses whether a party to an appeal may challenge a trial court's approved statement of the evidence. Alabama's Rule 10(d), Ala. R.App. P., is equivalent to Rule 10(c), Fed. R.App. P. See Mobley v. Turner, 346 So.2d at 428. There is authority in the federal courts for a challenge of the approved statement of the evidence and for remanding the case for a new trial. See Bergerco, U.S.A. v. Shipping Corp. of India, Ltd., 896 F.2d 1210 (9th Cir.1990).
The federal courts allow a challenge to a statement of the evidence. Bergerco, 896 F.2d at 1214-15. If a federal court is faced with such a challenge, it determines "whether a resolution of the disputed factual issues is essential to allow ... meaningful appellate review of the [trial] court's decision." Bergerco, 896 F.2d at 1215. The Bergerco court, after discussing other federal cases involving requests for a new trial based on the lack of an original transcript, explained that an appellant seeking a new trial so that a complete record can be developed must: "1) make a specific allegation of error; 2) show that the defect in the record materially affects the ability of the appeals court to review the alleged error; and 3) show that a Rule 10(c) [Fed. R.App. P.] proceeding has failed or would fail to produce an adequate substitute for the evidence." Bergerco, 896 F.2d at 1217. After setting forth these factors, the Bergerco court stated, "We believe these factors would be presented only in rare circumstances." Id.
In this case, the mother's complaint that the statement of the evidence is incomplete and inadequate does not sufficiently demonstrate how the defect materially affects this court's ability to review the case. We decline, based on the lack of authority in the mother's brief and on the requirements set forth in Bergerco, to remand this case for a new trial.
The trial court's approved statement of the evidence indicates that the parties were divorced in 1993, when the parties' child was three years old. In January 1995, the parties' child began living with the father in the paternal grandparents' home. In the summer of 1995, the father and the child moved out of the paternal grandparents' home. However, the child frequently stayed with the paternal grandparents, particularly when the father had to work.
In January 1996, the mother moved to Montgomery to attend college. The mother states in her Rule 10(d) statement that in September 1996, the parties "agreed" that the child would live with the father while the mother moved to Atlanta to attend college. However, the father's objection to the mother's statement of the evidence regarding that contention states that the mother relinquished custody to him; the father did not state that the parties entered *1127 into an alleged temporary agreement regarding custody of the child. The trial court adopted the father's amendment to that portion of the mother's statement of the evidence.
In 1996, the parties obtained a court order that suspended the father's child-support obligation because the child was living with the father; the mother was not ordered to pay child support. The 1996 court order did not address the issue of the custody of the parties' child. The record indicates that the mother visited the child "sporadically, usually every two months," and on birthdays and holidays.
In 1999, the mother moved with her boyfriend to Colorado. In the summer of 1999, the child visited the mother in Colorado. After the summer visitation ended, the mother informed the father that she would not return the child to Alabama. On October 14, 1999, the father filed a petition to modify custody. The trial court conducted a hearing on the father's petition to modify custody, on March 21, 2000. On April 26, 2000, the trial court entered a judgment in which it awarded custody of the child to the father.
Where a trial court makes a custody determination following an ore tenus proceeding, its judgment based on the evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Ex parte Jones, 620 So.2d 4 (Ala.1992); Durham v. Durham, 555 So.2d 1093 (Ala.Civ.App. 1989). The noncustodial parent must show that since the most recent custody order there has been such a material change in circumstances that a change in custody will materially promote the child's best interests and welfare; the noncustodial parent must also demonstrate that the benefits of the change in custody will outweigh the disruptive effect of uprooting the child. Ex parte McLendon, 455 So.2d 863 (Ala.1984). The primary concern in custody cases is the best interests of the child. Brown v. Brown, 602 So.2d 429 (Ala.Civ.App.1992). This court's review of the trial court's judgment modifying custody is limited to determining whether there is evidence to support that judgment. Ex parte Patronas, 693 So.2d 473 (Ala.1997).
"`This case, like all disputed custody cases, turns on the trial court's perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses ... and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.'"
Ex parte Patronas, 693 So.2d at 475 (citations omitted).
In his proposed amendments to the mother's Rule 10(d) statement of the evidence, the father stated that at the conclusion of the hearing on his petition to modify custody, the court had ruled:
"A. That a material change of circumstances had occurred since the last custody order in this cause and that a transfer of custody of the minor child to the [father] would materially promote the child's best interests; and
"B. A material change in circumstances had occurred when the [mother] voluntarily relinquished custody and allowed the minor child to reside with the father...."
The mother objected to that amendment. However, the trial court overruled the mother's objection.
The mother argues that the trial court erred in determining that she had relinquished custody of the child to the father in 1996 and that that action constituted a *1128 material change in circumstances that would justify a change in custody pursuant to Ex parte McLendon, supra. The mother, citing Ex parte Couch, 521 So.2d 987 (Ala.1988), argues that an agreement between parents to alter a custody arrangement does not constitute a waiver of the custodial parent's custody rights. See also Curl v. Curl, 526 So.2d 26 (Ala.Civ.App. 1988) (mother, the custodial parent, did not relinquish her right to custody of the parties' children by agreeing to allow the children to live with the father during one school semester). Our supreme court, noting that amicable alterations to custody arrangements can benefit the parties and their children, has declined to discourage parties from entering into temporary custody arrangements by holding that such agreements constitute a waiver of the custodial parent's custody rights. Ex parte Couch, 521 So.2d at 990.
In this case, however, the record contains evidence to support a conclusion that the trial court determined that the parties did not enter into an agreement to temporarily alter the existing custody arrangement. Although the mother claims that the parties "agreed" the child would live with the father while she attended college, the father's objection to that contention indicates that the mother relinquished custody of the child to him. In issuing its approved Rule 10(d) statement of the evidence, the trial court resolved this conflict in the father's favor. We conclude that the trial court did not agree with the mother's contention that the parties entered into a temporary custody arrangement in 1996. When a trial court has not specifically stated its findings of fact in its judgment, this court must assume that it made those findings of fact necessary to support its judgment. Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996); Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375 (Ala.1992); Lakeview Townhomes v. Hunter, 567 So.2d 1287 (Ala.1990); Berryhill v. Reeves, 705 So.2d 505 (Ala.Civ.App. 1997). This court will not presume error on the part of the trial court. See Boykin v. Magnolia Bay, Inc., 570 So.2d 639 (Ala. 1990). As further support for our conclusion, we note that the trial court approved that portion of the father's proposed amendment to the mother's statement of the evidence indicating that at the end of the March 21, 2000, hearing, it had concluded that the mother had relinquished custody to the father and that that action had constituted a material change in circumstances sufficient to justify a modification of custody. We therefore conclude that the mother's argument regarding temporary custody agreements, as that issue is discussed in Ex parte Couch, supra, is, therefore, not dispositive of this issue.
In this case, the mother left the minor child in his father's care for more than three years. Even though the mother did not have a child-support obligation, she made no other financial contribution toward the support of the child during those years. Further, the evidence indicates that she visited the child only sporadically and, therefore, had only limited involvement with the child during the years he lived with his father. The trial court was in the best position to determine the issue of custody, because it was able to evaluate the evidence and the credibility of the witnesses. Hall v. Hall, 571 So.2d 1176 (Ala.Civ.App.1990). Our review of a trial court's custody determination is very limited; this court is not allowed to reweigh disputed evidence. Ex parte Patronas, supra. This court is not allowed to substitute its judgment for that of the trial court. Id. We cannot say that the trial court abused its discretion in concluding that the father had proved a material *1129 change in circumstances that warranted a modification of custody pursuant to Ex parte McLendon, supra.
The appellee's request for an attorney fee is denied.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially.
CRAWLEY, J., dissents.
MURDOCK, Judge, concurring specially.
Anthony M. Pickett and Andrea Pickett were divorced by the Circuit Court of Russell County in 1993, when their son was three years old. The mother was awarded custody of the child. Less than a year and a half later, when her son was four years old, the mother voluntarily relinquished actual physical custody of the child to the father.[1] At that point, the child began residing with his father, and frequently stayed with his paternal grandparents, particularly when his father would work late or would have to be at work early.
In January 1996, a year after the child began living with his father, the mother moved to Montgomery to attend college. Thereafter, the mother moved to Atlanta, Georgia. The child has lived with his paternal grandparents for the majority of his life, and the father also lived in the same household the majority of the time.
From the time the mother voluntarily relinquished actual physical custody and the child began residing with the father, the mother's visits with the child were sporadic, usually every two months. During 1997 and 1998, the mother visited the child on birthdays and holidays. The child never resided with the mother in either Montgomery or Atlanta, and the mother did not provide any financial support for the child after September 1996.[2]
The child was active in sports and was doing well academically while living in Alabama. The record also indicates that the father and the paternal grandparents attended school functions involving the child when he lived in Alabama. The maternal grandparents took the child to visit with them on some weekends.
In 1999, the mother moved to Colorado with a man she had begun dating. She informed the father that she wanted her son to visit her in Colorado during the summer of 1999. The mother and father agreed that the child would be returned to Alabama at the end of the summer. While in Colorado, the child was removed not only from his father, but also his entire extended family, including both maternal and paternal grandparents. The paternal grandfather testified that, in July 1999, the mother stated to him that she wanted the child to remain with the father.
*1130 After the child's summer visitation was to have ended, however, the mother let it be known that she was not returning the child to Alabama. Thereafter, on October 14, 1999, the father filed a petition seeking court-ordered legal and physical custody of his son. Following a hearing, the trial court granted the father's petition and ordered that the child be returned to Alabama to reside with the father following the 1999-2000 school year.[3]
The order of the trial court contains no specific findings of fact. "In the absence of specific findings of fact, [however,] appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parte Roberts, [Ms. 1990565, Feb. 16, 2001] ___ So.2d ___, ___ (Ala.2001). Further, although the purpose of a Rule 10(d) statement is not to set out proposed findings of fact by the trial court, the Rule 10(d) statement approved by the trial court recited rulings made by the trial court at the conclusion of its hearing, including a ruling "[t]hat a material change of circumstances had occurred since the last custody order in this case and that a transfer of custody of the minor child to the [father] would materially promote the child's best interest." In addition, among the other rulings recited in the approved Rule 10(d) statement is this: "A material change of circumstances occurred when the [mother] voluntarily relinquished custody and allowed the minor child to reside with the father."
As our Supreme Court recently stated in Ex parte Roberts, supra:
"When evidence in a child custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala. Civ.App.1993), set out the well established rule:
"`"Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala. Civ.App.1989), and Vail v. Vail, 532 So.2d 639 (Ala.Civ.App.1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala.Civ.App.1990); Flowers v. Flowers, 479 So.2d 1257 (Ala.Civ.App. 1985)."'....
". . . .
"Neither the Court of Civil Appeals nor this Court is allowed to reweigh the evidence in this case. This case, like all disputed custody cases, turns on the trial court's perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses... and the trial court is in the better position to consider all of the *1131 evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody."
___ So.2d at ___ (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324-26 (Ala. 1996)).
Under these standards of review, the record does not support a holding that the trial court's order was plainly and palpably wrong. The testimony of the parties, and the inferences the trial judge was authorized to draw from his observation of the witnesses and the substance of their testimony, sufficiently support the finding that a change in custody "would materially promote the child's best interests."
The mother argues, however, that affirming the trial court's ruling would be inconsistent with our Supreme Court's holding in Ex parte Couch, 521 So.2d 987 (Ala.1988). See also Curl v. Curl, 526 So.2d 26 (Ala.Civ.App.1988). In my opinion, the facts of the present case go well beyond those in Couch and Curl, and make this case distinguishable from both of them.
In Couch, the Supreme Court upheld an award of physical custody of children to the father after the children had lived primarily in the mother's home for about a year. The mother and father initially had been awarded joint legal and shared physical custody of the children. After a period of two to three months during which the children lived with their mother one week and their father the next, the father expressed concern about his work schedule. As a result, the father and mother agreed that it would be in the best interests of the children at that time to allow them to live primarily in the mother's home. The parents lived only a half mile from one another, however, and the father was allowed liberal visitation rights of more than every other weekend. For all that appears from the discussion of the record in Couch, the father remained very supportive and heavily involved in his children's lives during the time this arrangement was in place.
In contrast to Couch, the change in actual physical custody that occurred in the present case lasted for an initial period of four and a half years. Further, except for the 1999-2000 school year, the child has resided with the father and the paternal grandparents from January 1995, when he was four years old, to the present time. Moreover, unlike the extensive involvement of the father in Couch, the mother in this case has had very little involvement in her child's life. Despite the fact that the father proposed an express "voluntary relinquishment" finding in the Rule 10(d) statement that he submitted to the trial court, a finding that the trial court ultimately adopted, the mother did not proffer any evidence that would have contradicted such a finding in her proposed Rule 10(d) statement. She did not suggest any emotional, physical, or financial involvement by her with the child, other than sporadic visits. Nor did the mother suggest any justification for the infrequent nature of her visits and other lack of involvement with the child.
Similarly, in my view, the differences in the facts of the present case and those in Curl are striking. In Curl, this court affirmed the denial of a father's modification petition where the mother and father had agreed to a temporary change in the physical residence of the child for a period of just a few months so as to allow the child to complete the spring semester of school while living with his father. In contrast, in the present case, there was a voluntary relinquishment of physical custody by the mother that lasted several years, comprising a majority of the child's life.
Nevertheless, citing Couch, the mother in the present case contends that temporarily *1132 agreeing to allow a child to live with a noncustodial parent, or even a grandparent, for "necessitous times" does not mean that the custodial parent has "voluntarily relinquished custody" of the child. However, even if the evidence in this case supported the conclusion that the change in actual physical custody of the child began as an amicable and temporary arrangement, that would not remove subsequent developments from consideration by the trial court. The fact that a change in actual physical custody might begin as an amicable and temporary arrangement for "necessitous times" does not mean that it cannot evolve into something quite different. When a parent with the legal right to physical custody surrenders actual physical custody of his or her child to the other parent for such an extended period of time as occurred in this case, especially when, during that period, the surrendering parent maintains so little involvement with and support of the child as occurred in this case, the fact that the change in actual physical custody might have begun as an amicable and temporary arrangement does not serve to insulate the legal custodian from a finding that he or she thereafter "voluntarily relinquished" the custody of the child. Such an outcome should not be viewed as "discouraging rational, reasoned decisions by divorced parents regarding the welfare of their children" or temporary, "amicable arrangements" for necessitous times. See generally Couch, 521 So.2d at 990; Curl, 526 So.2d at 28. Instead, it simply is a recognition of the reality that, even in the context of what begins as a temporary, amicable arrangement for necessitous times, it is possible for a parent to voluntarily relinquish custody of his or her child. Temporary arrangements for necessitous times are one thing; abandonment of a child to the other parent is another. In fact, when this happens, as further discussed below, I do not believe the relinquishing parent has the benefit of the enhanced McLendon presumption. See Ex parte McLendon, 455 So.2d 863 (Ala.1984).
The dissent relies, in part, upon this court's decision in P.A.T. v. K.T.G., 749 So.2d 454 (Ala.Civ.App.1999), cert. denied, 749 So.2d 458 (Ala.1999). In P.A.T., despite the fact that the child continued to reside with the mother at all relevant times, this court focused on the fact that court-ordered physical custody of the child was with the father. This court noted that the father did not lose his court-ordered status as the primary[4] physical custodian of the child, despite the fact that the parties had acted in a manner inconsistent with that court order. 749 So.2d at 458. Therefore, reasoned this court, in order to *1133 obtain primary physical custody of the child, the mother had the burden of meeting the "material promotion" standard imposed by McLendon. Id. In my view, P.A.T. is at odds with the very purpose of the McLendon standard and, therefore, should be overruled.
In denying certiorari in P.A.T., our Supreme Court did not explain its reasoning, but did note that its "denial of the petition should not be taken as an approval of the reasoning stated in the Court of Civil Appeals' opinion." Ex parte K.T.G., 749 So.2d 458 (Ala.1999). It is therefore noteworthy that former Chief Justice Hooper wrote a separate opinion, which he labeled as a special concurrence. By "concurring specially," rather than concurring in the result, Chief Justice Hooper indicated that his opinion was at least consistent with that of the majority. 749 So.2d at 459.
In his special opinion, Chief Justice Hooper explained that his vote to deny certiorari was a function of § 15-20-26(c), Ala. Code 1975, which prohibited the child from living with the mother's then-current boyfriend, a convicted sex offender. In addressing the applicability of the McLendon standard, however, Chief Justice Hooper noted:
"The rationale behind the [enhanced] McLendon standard is to prevent children from being uprooted from a stable home unless the move will substantially benefit the child. In the present case, the child did not live with the parent who had legal physical custody, but had always lived with the petitioning parent. The rationale of McLendon is inapplicable because the child would not be uprooted if the petitioning parent were given legal physical custody."
Ex parte K.T.G., 749 So.2d 458, 459 (Ala. 1999) (Hooper, C.J., concurring specially) (emphasis added). See also Ex parte Weiss, 718 So.2d 44, 45 (Ala.1998) (Maddox, J., dissenting from denial of certiorari, joined by Hooper, C.J.) (recognizing policy underlying McLendon as one of minimizing disruption to the child, and questioning whether the McLendon standard should apply when that purpose is not served). For the same reason, I would hold that the rationale of McLendon is inapplicable in the present case and that, therefore, the trial court's judgment should be upheld based on the application of the "best-interests" standard.[5]
Nonetheless, the father does not try to avoid the McLendon "material promotion" *1134 standard. Instead, he points out that the Rule 10(d) statement adopted by the trial court states that the transfer of legal custody to the father would "materially promote the child's best interest."[6] The father contends that the record supports the conclusion that he satisfied this burden of proof.
While other facts in this case also support the trial court's determination that the material promotion standard has been met,[7] the evidence of the physical-custody change that occurred in this case certainly can be used to help satisfy the petitioner's burden of proof. See Bryowsky, 676 So.2d at 1325 (noting that the nature of the parties' informal child-care arrangement and its impact on the child "would be factors to be considered in determining whether a transfer of custody from [one parent] to the [other] would materially *1135 promote the child's welfare"). As previously noted, the presumption in favor of not disturbing a child's actual physical custody is a strong one, especially when the child has settled into a happy and healthy environment with the custodial parent.[8] Even under the facts in Couch, our Supreme Court noted that the desire not to disturb the settled living arrangements of the children with their mother could be a "valid consideration." 521 So.2d at 990. The court in Couch even suggested that this might have been sufficient to consider imposing the "material promotion" standard on the father, if not for the mother's pending relocation. If the desire not to disturb the settled living arrangements of the children in Couch was a valid consideration, despite the high level of support and involvement in the children's life by the parent without actual physical custody, it certainly could be true in the present case. In addition, the same concerns expressed in Couch regarding the moving of children out of state and away from both the non-moving parent and the extended families of both parents support the trial court's judgment in the present case.[9]Id.
An appellant has a duty to ensure the correctness of the appellate record and to see that it contains evidence sufficient to warrant reversal. Elliott v. State ex rel. Outlin, 547 So.2d 566, 568 (Ala.Civ.App. 1989). The appellant contends, however, that she is frustrated in her attempt to demonstrate the error of the trial court's holding because of the lack of a transcript in this case. Even if she could point to additional evidence supporting her request for custody, however, that would not change the fact that there is substantial evidence in the record that supports the trial court's finding in favor of the father. Moreover, the appellant made no proffer to the trial court of any Rule 10(d) evidentiary statements that, even had they been accepted by the trial court, would require us to reverse the trial court's judgment. Nor has she suggested to this court what evidence was missing from the Rule 10(d) statement that would, if known to this court, counsel a different outcome. To the contrary, in her brief to this court, the petitioner notes that the trial in this case "was [a] hotly contested matter in which numerous witnesses were called." It is in precisely such a case that the ore tenus rule was intended to operate. In light of the evidence of the nature and extended duration of the mother's relinquishment of actual physical custody to the father, the inherently disruptive effect of uprooting the child from his current environment, and the other evidence that supports a finding that the change of custody ordered by the trial court would materially promote the welfare and best interests of the *1136 child, I conclude that the record sufficiently supports the trial court's judgment.
The trial court's judgment is not plainly and palpably wrong. I therefore concur.
CRAWLEY, Judge, dissenting.
I must dissent from the majority's affirmance of the custody modification in this case. In my opinion, the Rule 10(d), Ala. R.App. P., statement of the evidence does not contain sufficient evidence from which this court could conclude that the father met the burden imposed on him by Ex parte McLendon, 455 So.2d 863, 865 (Ala. 1984). By affirming the trial court's modification, based upon the legal conclusions contained in the statement of evidence, I believe that the majority ignores our supreme court's clear support of "amicable agreements" between parents as to custody, see Ex parte Couch, 521 So.2d 987, 990 (Ala.1988), and the requirement that the noncustodial parent seeking a modification meet the McLendon standard. See Curl v. Curl, 526 So.2d 26, 28 (Ala.Civ.App.1988).
The majority indicates that the trial court did not accept the mother's characterization of the change in physical custody as an "agreement"; instead, the trial court, according to the majority, adopted the father's characterization of the change of custody as a "voluntary relinquishment" of the mother's right to custody. This, in my opinion, is a difference without a distinction. The mother voluntarily left the child with the father, who willingly assumed responsibility for the child. That is an agreement. Never did the father file a petition for a modification of custody or file a dependency petition alleging that the mother had abandoned the child on his doorstep, even when he appeared in court to suspend his child-support obligation never, that is, until the mother moved to Colorado and reasserted her right to her child.
The trial court concluded that the father had proved that a material change in circumstances had occurred when the mother "voluntarily relinquished" custody of the child to the father and when the mother failed to return the child to the father after "visitation" in Colorado. The trial court's conclusion that the mother's agreement to allow the father to exercise custody while she attended college amounted to a "voluntary relinquishment" of her right to custody is error. Both this court and our Supreme Court have held that voluntary agreements as to custody arrangements are not viewed as a change in the original custody judgment. See Ex parte Couch, 521 So.2d at 990; Curl, 526 So.2d at 28; see also P.A.T. v. K.T.G., 749 So.2d 454, 458 (Ala.Civ.App.1999). In fact, Couch, Curl, and P.A.T. stand for the proposition that when divorced parents amicably agree to alter the custody arrangements established by of a prior judgment, one parent has not "voluntarily relinquished" custody to the other.
In Couch, the parties shared joint custody of their children under the prior judgment; however, the father allowed the mother to be the primary custodian, because of his overtime work schedule. Couch, 521 So.2d at 989-90. When the mother remarried and chose to move, the father reasserted his right to joint custody. Id. The mother argued that the father had given up his right to custody by allowing her to assume what was in effect primary custody of the children. Id. The supreme court disagreed, holding that the "amicable arrangement" between the parties did not affect the custody judgment and that, because the parties shared joint custody under that judgment, the father need only meet the "best interest" standard to be awarded custody in his modification action. Id. at 990.
*1137 In Curl, the opposite situation presented itself. The mother, who had been awarded physical custody of the parties' children, agreed to allow the children to remain with the father during the spring school semester following Christmas visitation. Curl, 526 So.2d at 27. The father then petitioned for a modification of custody, arguing that a material change in circumstances had occurred when the mother had "voluntarily given the children to him." Id. (emphasis added). The trial court denied the father's petition and he appealed. Id. This court, in affirming the judgment, concluded that the father was required to meet the McLendon standard in order to succeed on his petition, because, it said, the mother did not "give up" her right to custody by agreeing to allow the children to remain with the father temporarily. Id. at 28.
In P.A.T., this court reversed a modification changing custody from the father, who had had court-ordered custody, to the mother, with whom the child had been living by virtue of an agreement with the father, because the evidence of record did not indicate that the modification would materially promote the best interests of the child. P.A.T., 749 So.2d at 458. This court noted the ore tenus presumption, but pointed out that the record must contain evidence to support the judgment. Id.
This situation is nearly identical to the one presented in P.A.T. The mother, desiring to attend college away from home, requested that the father assume custody of the child. He did so, caring for the child with the assistance of his parents, for three years. When the mother relocated to Colorado, she desired to have her child rejoin her. The father, understandably, wanted the child to return to Alabama to live with him.
Based on Curl and P.A.T., the father, in order to succeed on his modification petition, must meet the standard set out in McLendon. He must establish that the change in custody would materially promote the best interests and welfare of the child and that the benefits of the change in custody would "more than offset the inherently disruptive effect caused by uprooting the child." McLendon, 455 So.2d at 865; see also King v. King, 521 So.2d 69, 70 (Ala.Civ.App.1988) (quoting Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App.1976)). The statement of evidence reveals very little about the child's life in either parent's home. We know only that the child's extended family lives in Alabama; that he played sports while he lived with his father; and that he performed well academically while in his father's custody. As for the child's life with his mother in Colorado, we know only that the child and his mother attend sporting events together and enjoy a good relationship. Nowhere in the statement of evidence or in the judgment does the trial court indicate what evidence supports its conclusion that the child's best interests would be materially promoted if custody were awarded to the father. See McLendon, 455 So.2d at 865.
The majority concludes that the father presented sufficient evidence to support the trial court's judgment. According to the majority, the evidence that supports the judgment is the very evidence that, under Couch, Curl, and P.A.T., is not relevant when an "amicable agreement" dissolves. The majority affirms the trial court's holding that the mother "voluntarily relinquished" custody of the child. As previously discussed, Couch, Curl, and P.A.T., hold that amicable agreements do not result in the relinquishment of the custodial parent's right to custody.
This court is bound by the decisions of the supreme court, Ala.Code 1975, § 12-3-16. Both our supreme court and this court *1138 have determined that a custodial parent does "not lose his [or her] court-ordered status as the primary physical custodian of the child simply because the parties had been acting in a manner inconsistent with the court's order." P.A.T., 749 So.2d at 458; see also Couch, 521 So.2d at 990; Curl, 526 So.2d at 28. In this case, the majority fails to apply this principle of law, without adequately distinguishing it.
A statement of the evidence is to be treated like a transcript, and this court accepts the statement as true. See Mobley v. Turner, 346 So.2d 427, 428 (Ala. 1977). If a transcript shows no evidence that supports the trial court's judgment, then court has no alternative but to reverse the judgment. P.A.T., 749 So.2d at 458. We must do the same when a "statement of evidence" shows no supporting evidence. Therefore, I must dissent.
NOTES
[1] The evidence described in this opinion is taken from the Rule 10(d), Ala. R.App. P., statement approved by the trial court. In her proposed Rule 10(d) statement, the mother offered descriptions of some additional and different testimony, which the trial court did not approve. We therefore cannot consider such additional and different evidence to have been before the trial court. Seidler v. Phillips, 496 So.2d 714, 716 (Ala.1986). Nevertheless, in light of the concerns discussed in the majority opinion as to the state of the record, I have reviewed the mother's proposed Rule 10(d) description of testimony at trial and have concluded that, even if the mother's version of the evidence were included in the Rule 10(d) statement, my opinion as to the trial court's ruling would not change.
[2] There was no order requiring the mother to make child-support payments. As a result of the child's residing with the father, the father's obligation to make child-support payments was ended by court order in or about September 1996.
[3] No stay was granted as to the trial court's order requiring the child to be returned to the father in Alabama at the end of the 1999-2000 school year.
[4] I note a tension in the caselaw applying McLendon. One line of cases holds that "[w]here there is no prior order granting exclusive physical custody to one parent ... the McLendon standard is not applicable ... [and] the `best interests and welfare' of the children standard applies." Hovater v. Hovater, 577 So.2d 461, 464 (Ala.Civ.App.1990) (emphasis added; citing Scott v. Scott, 563 So.2d 1044 (Ala.Civ.App.1990)). A second line of cases holds that where a prior judgment vests the right of primary physical custody in one parent, the McLendon standard applies to the other parent's subsequent modification petition. E.g., Jenkins v. Jenkins, 541 So.2d 19 (Ala.Civ.App.1989); Blackmon v. Scott, 622 So.2d 393 (Ala.Civ.App.1993). While the Supreme Court initially indicated support for the second of these two lines of cases by citing Blackmon in Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996), it did not overrule Scott v. Scott or Hovater. Also, two justices of the Supreme Court have since cited Hovater in a dissent from the denial of certiorari review. Ex parte Weiss, 718 So.2d 44, 45 (Ala.1998) (Maddox, J., dissenting, joined by Hooper, C.J.), denying cert. to Weiss v. Hiscocks (No. 2961282), 738 So.2d 921 (Ala.Civ. App.1998) (table) (affirming, without opinion, a trial court's denial of a petition to modify custody).
[5] The unquestioned touchstone of custody analysis by this court and our Supreme Court always has been the best interests and welfare of the child. It is only toward this end that our law has recognized a strong policy against disrupting the physical custody of a child where that physical custody has provided a stable, nurturing, and loving home for a significant period of time. The enhanced standard of "material promotion" of the child's welfare and best interests, as opposed to a standard of merely "the child's best interests," was articulated in Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), and reaffirmed in Ex parte McLendon, 455 So.2d 863, 865 (Ala.1984), as a way of recognizing the "inherently disruptive effects of uprooting a child" from a stable physical environment. Although there was a prior court order awarding physical custody to the parties who prevailed in McLendon, it was the settled, actual physical custody of the child in that case that informed the court's analysis.

The McLendon court began its analysis by explaining the normal presumption attendant to being a natural parent:
"[A] natural parent has a prima facie right to the custody of his or her child. However, this presumption does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a nonparent."
McLendon, 455 So.2d at 865. (I am not aware of any cases by which a parent has lost the prima facie right to the custody of a child as a result of a voluntary forfeiture not incorporated into a court "decree." Cf. Ex parte White, 631 So.2d 246, 247 (Ala.1993) (adopting statement of Thigpen, J., that he found "no authority giving an informal agreement regarding custody between parents the same status as a judicial determination," Stanton v. Stanton, 631 So.2d 242, 246 (Ala.Civ.App. 1993)).)
As the McLendon court then proceeded to explain, however, there are certain circumstances under which a natural parent receives the benefit of an enhanced presumption in favor of his or her right to physical custody of a child. In McLendon, the Supreme Court applied this enhanced presumption to the child's grandparents, who had been awarded legal physical custody by the court and had proceeded to maintain actual physical custody of the child for several years, thereby creating a stable, nurturing environment from which it would have been inherently disruptive to uproot the child. As explained by the McLendon court, the circumstances under which it recognized that an enhanced presumption should apply were as follows:
"`Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of [h]er infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote [h]er child's welfare.'"
Id. at 865 (quoting Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947)) (emphasis added).
"[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood."
Id. at 865 (emphasis added; quoting Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App. 1976)). In other words, the stable, nurturing environment that the McLendon presumption seeks to protect is a function of a child's real-life experiencein his relationships and with his physical environmentnot of abstract legal rights of which the child likely has no awareness. See C.L.C. v. J.D.A., 690 So.2d 365, 368 (Ala.Civ.App.1996) (Monroe, J., dissenting and noting that "[a]s a practical matter, whether a prior judgment exists has little or no relevance to a child who must leave a familiar home and family if custody is changed").
In this case, the mother has not "acted upon" her legal right to physical custody "to the manifest interest and welfare of the child" by providing a stable environment in which the child has "put down ... those roots necessary for the child's healthy growth into adolescence and adulthood." Instead, she has voluntarily relinquished actual physical custody of the child for most of his life. The enhanced McLendon presumption, therefore, does not apply to the mother. Accordingly, the father need only prove that an award of physical custody to him would be in the "best interest" of the child.
[6] Even if this is not a finding by the trial court, this court will presume that the trial court made such findings as were necessary to support its judgment. E.g., Howard v. Howard, 608 So.2d 753, 754 (Ala.Civ.App. 1992).
[7] See factual discussion above and in the main opinion. In addition, our Supreme Court has ruled that evidence indicating a minor son has a strong relationship with his father and his father's extended family and indicating that that strong relationship is in the best interest of the child, is sufficient to support modification of custody after the child's mother decided to move out of state. Ex parte Monroe, 727 So.2d 104 (Ala.1999).
[8] Given the changes in custody that already have occurred in this case, it is worth noting that the McLendon court stated that "[w]e cannot overemphasize that `frequent disruptions [in physical custody] are to be condemned.'" McLendon, 455 So.2d at 866 (quoting Wood v. Wood, 333 So.2d at 828).
[9] This court has never said that a physical custodian's physical move, particularly out of state, could not be a factor in deciding a change of custody. Our courts have said only that such a move is not necessarily controlling. Scacca v. Scacca, 694 So.2d 1, 4 (Ala. Civ.App.1997) (A "change in the custodial parent's residence is only one factor to be considered in determining the outcome of a modification petition and does not necessarily justify changing custody"). Clearly, however, a physical move out of state is a factor. Ex parte Murphy, 670 So.2d 51 (Ala.1995) ("Although a change of residence is only one factor for the court to consider in making a change of custody decision, it is a factor to be considered"; affirming trial court's change of custody where the custodial parent planned to move with the child to Texas, away from the child's paternal and maternal grandparents, who lived in Lauderdale County, Alabama).