The issue in this case is whether the trial court applied the correct legal standard to the evidence in ruling upon the father's petition for a change of custody. The father points out that the presumption recognized in Ex parte McLendon, 445 So.2d 863 (Ala. 1984), in favor of the parent with physical custody is a "rule of repose" condemning "frequent disruptions" in the lives of children "whose welfare is paramount." 445 So.2d at 865. He argues that the trial court in this case erred in extending the benefit of the McLendon presumption to the mother and that, instead, he should have had the benefit of the McLendon
presumption.
The father emphasizes the unique facts of this case — that for more than three consecutive years immediately prior to trial, and 39 of the 47 months since the trial court's original divorce judgment, the children lived with him, rather than with the mother. The father argues that "[t]he historical and well documented reasoning for . . . theMcLendon standard was to condemn frequent disruptions in the lives of children," and that "[i]n this case the children have lived happily with the father" for over 80% of the time since the divorce. According to the father, "[i]f this court were to condone a respondent such as this mother allowing such a great amount of time to pass without any efforts to secure custody[,] then this court would be violating the spirit of the reasoning behind McLendon." Moreover, the father argues that this court should "recognize that it would be inequitable, unjust, unfair, and in violation of the spirit of McLendon to reward the inactivity and lack of prosecution of her rights by the mother in this case with the protection provided by McLendon." The father concludes that "the passage of time coupled with the failure to prosecute her rights should trigger theMcLendon standard against the mother in this fact-specific setting."
In support of his appeal, the father also notes that "the intention ofMcLendon . . . was to condemn interruption in the lives of children and to provide stability." He also states that "[i]t would seem amiss for this court to penalize the de facto custodial parent with the rule designed to protect the custodial parent." After arguing that theMcLendon presumption should be applied in his favor, not the mother's, the father asks that "the decision of the trial court . . . be reversed and the case sent back for a new trial with the equitable and just presumptions placed as they should be upon the respective parties."
To the extent the father argues that the mother should not "equitably and justly" be entitled to the McLendon presumption under the specific facts of this case, I believe there may be merit in his position.[1] *Page 827 
As articulated in McLendon, the creation of an enhanced presumption in favor of a custodian over a noncustodial parent requires the satisfaction of each of two elements. First, in order to overcome the noncustodial parent's prima facie right to the custody of his or her child (see Exparte Terry, 494 So.2d 628 (Ala. 1986)), there must be either "a voluntary forfeiture of custody or a prior decree removing custody from the natural parent." McLendon, 455 So.2d at 865 (emphasis added); Sims v. Sims,515 So.2d 1, 2 (Ala.Civ.App. 1987) (McLendon presumption requires "either voluntary relinquishment . . . or [a] prior judicial decree" (emphasis added)).[2] Second, the voluntary forfeiture or judicial decree must have "been acted upon by [the custodian] to the manifest interest and welfare of the child." McLendon, 455 So.2d at 865. As our Supreme Court explained, this second element is a function of the fact that the McLendon presumption is
 "`a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood.'"
McLendon, 455 So.2d at 865 (emphasis added) (quoting Wood v. Wood,333 So.2d 826, 828 (Ala.Civ.App. 1976)).
As to the first McLendon element, and as the majority indicates, our appellate courts have held that although a "custody award" (i.e., a determination of custody generally intended to last until one of the parties successfully petitions the court to modify its judgment, even where the custody may be called "temporary" by the trial court) is a "final judgment" and constitutes a "prior judicial decree" for McLendon
purposes, a "pendente lite custody" order is not final and does not constitute a "prior judicial decree" under McLendon. See Ex parte J.P.,641 So.2d 276 (Ala. 1994) (explaining terms in quotation marks in preceding sentence); Sims v. Sims, 515 So.2d 1 (Ala.Civ.App. 1987); Davisv. Moody, 459 So.2d 914 (Ala.Civ.App. 1984). In this case, there is no final judgment awarding custody to the father, only an award of custody pendente lite. Nor does it appear from the father's brief that the father argues to this court that the mother's actions or her inaction during the three-plus years this litigation was pending prior to trial constituted a "voluntary relinquishment" of the child for purposes of the McLendon
analysis. An issue not raised on appeal is waived. Pardue v. Potter,632 So.2d 470 (Ala. 1994).[3] *Page 828 
However, although the father in this case may not be entitled to the benefit of the McLendon presumption, the mother also may not be entitled to that presumption under the peculiar facts of this case. In short, this is a unique case in which the father has satisfied the second McLendon
element, but not the first, and in which the mother has satisfied the first McLendon element, but perhaps not the second.
Over three years passed following the trial court's pendente lite order placing the children in the custody of the father. During this time, the father apparently "acted upon" his custody of the children to their "manifest interest and welfare." For over three years, the children presumably realized the "benefit of stability" and "put down into [their] environment those roots necessary for [their] healthy growth." As the trial court expressly found, "both parents love the children and . . . both want the best for the children," and the advantages in this case of awarding custody to the father "would outweigh the disruption inherent in a change in custody . . . since the children have been in their father's custody for some period of time."[4]
The material point for purposes of the issue presented in this case, however, is that during this same three-plus-year period in which the children were presumably realizing "stability" and "putting down roots" in their relationships and in the physical environment created by the father, they were not doing so with the mother. Although the mother had physical custody of the children for a number of months after the parties' divorce in January 1997, for more than 80% of the time since the parties' divorce the children did not live with the mother.
In his writing in Ex parte K.T.G., 749 So.2d 458 (Ala. 1999), Chief Justice Hooper addressed the applicability of the McLendon standard: *Page 829 
 "The rationale behind the [enhanced] McLendon
standard is to prevent children from being uprooted from a stable home unless the move will substantially benefit the child. In the present case, the child did not live with the parent who had legal physical custody, but had always lived with the petitioning parent. The rationale of McLendon is inapplicable because the child would not be uprooted if the petitioning parent were given legal physical custody."
749 So.2d at 459 (Hooper, C.J., concurring specially) (emphasis added).See also Ex parte Weiss, 718 So.2d 44, 45 (Ala. 1998) (Maddox, J., dissenting from the denial of certiorari review, joined by Hooper, C.J.) (recognizing the policy underlying McLendon as seeking to minimize disruption for the child, and questioning whether the McLendon standard should apply when that purpose is not served). As I noted in Pickett v.Pickett, 792 So.2d 1124 (Ala.Civ.App. 2001), "the stable, nurturing environment that the McLendon presumption seeks to protect is a function of a child's real-life experience — in his relationships and with his physical environment — not of abstract legal rights of which the child likely has no awareness." 792 So.2d at 1133-34 n. 5 (Murdock, J., concurring specially). See also C.L.C. v. J.D.A., 690 So.2d 365, 368
(Ala.Civ.App. 1996) (Monroe, J., dissenting and noting that "[a]s a practical matter, whether a prior judgment exists has little or no relevance to a child who must leave a familiar home and family if custody is changed").
In the present case, the stable home, nurturing relationships, continuity, and familiar physical environment and community, the protection of which is the whole purpose for the McLendon presumption, may not have existed with the mother. Shifting formal custody of the children to the father arguably would not have the "inherently disruptive effect caused by uprooting . . . child[ren]" from the secure, established relationships and environments with which the McLendon presumption is concerned. In this case, the children's "roots" arguably were not in the mother's home.[5]
In reaching this conclusion, I acknowledge that this court held inSims, supra, that a parent cannot benefit from a pendent lite order toobtain the McLendon presumption for himself or herself; however, it is clear that a pendente lite order can have the practical effect of preventing a parent from "acting upon" a prior custody order and establishing a secure, stable relationship and home environment for the child. If the issue were one of the parents' rights, and a parent were thereby prevented from satisfying this second element necessary to give rise to the McLendon presumption, then one might argue that a parent should not be "prejudiced" by an unappealable pendente lite order. However, it is not a question of parents' rights; it is a question of what is in the child's best interests. The McLendon presumption is forthe benefit of the child, not the parent. When, for whatever reason, a stable, nurturing home in which the child has put *Page 830 
down roots necessary for his or her healthy growth does not exist with a particular parent, there is no "inherently disruptive effect" in not awarding physical custody of the child to that parent; the McLendon
presumption logically cannot apply in such a case.
Accordingly, the McLendon presumption should not necessarily have been applied in this case. I would remand for further proceedings or findings consistent with this dissent, including a determination by the trial court as to whether the original custody judgment was "acted upon by [the mother] to the manifest interest and welfare of the child" so as to satisfy the second element necessary to give rise to the McLendon
presumption in her favor.
[1] Apparently in reference to the proposition that the mother should not be entitled to the McLendon presumption, the majority opinion expresses concern that this dissent discusses an issue not brought before this court by the father. The father's argument, however, addresses the issue of the appropriate standard of proof and whether the mother or the father should have the benefit of the McLendon presumption. Inherent in the father's argument, as I read it, is the position that the mother should not benefit from a McLendon presumption in her favor. I simply agree with the father's argument insofar as it challenges the trial court's recognition of a McLendon presumption in favor of the mother.
[2] I note the use of the emphasized disjunctive "or" in the articulation of this first element in both McLendon, itself, and in subsequent cases. See also Ex parte R.C.L., 627 So.2d 920 (Ala. 1993) (finding no prior judicial decree, but remanding for a finding of whether there had been a voluntary forfeiture of custody); McGinnis v. McGinnis,567 So.2d 390 (Ala.Civ.App. 1990) (affirming application of McLendon
presumption against mother to whom court had awarded custody, but who voluntarily relinquished that custody for two years to child's grandparents). R.C.L. and McGinnis have come to my attention since I wrote in Pickett v. Pickett, 792 So.2d 1124, 1133-34 n. 5 (Ala.Civ.App.) (Murdock, J., concurring specially), that I was not aware of any cases in which, for purposes of the McLendon analysis, a parent had lost his or her prima facie right to the custody of a child as a result of the voluntary forfeiture not incorporated into a judicial decree.
[3] I do not agree, however, with the majority's conclusion that the father's position is fatally flawed because he did not ask for a final hearing to determine custody. The father had custody of the child during the three-plus years in question; it was the mother who needed to seek a hearing in order to regain custody.
Other than the fact that the mother found herself needing to replace her trial counsel, there is no justification shown in the record for such an extended delay. No discovery was being pursued during this time, and the record reflects no efforts whatsoever by the mother to obtain a hearing or to otherwise pursue the custody of her child. As noted in the text, however, the father does not argue to this court that the mother's inaction constituted a "voluntary relinquishment" of the child to him.
[4] I question how the trial court could find that the advantages of awarding custody to the father "would outweigh the disruption inherent in a change of custody," but then conclude that the father had not shown a sufficient promotion of the child's best interests to overcome theMcLendon presumption. As the McLendon court explained,
 "`[t]he doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child.'
". . . .
 ". . . It is important that [the party seeking a change of custody] show that the child's interests are promoted by the change, i.e., . . . produce evidence to overcome the `inherently disruptive effect caused by uprooting the child.'"
McLendon, 455 So.2d at 865-66 (emphasis added) (quoting Wood v. Wood,333 So.2d 826, 828 (Ala.Civ.App. 1976)). Cf. Ex parte Bryowsky,676 So.2d 1322, 1324 (Ala. 1996) ("informal arrangement to care for a child . . . and its impact on the child [are] factors to be considered in determining whether a transfer of custody from the mother to the father would promote the child's welfare"). The father makes no argument in this case, however, that once the trial court decided to extend a McLendon
presumption in favor of the mother, that court erred in the specific way in which it understood and applied that presumption.
[5] A failure to acknowledge that a pendente lite order can have the practical effect of preventing a parent who has been awarded permanent custody from "acting upon" that order and creating the secure and familiar relationships and environment contemplated by the McLendon
presumption, and which are necessary to satisfy the second McLendon
element, would mean that the McLendon presumption is to be extended to parents to whom a formal custody award is made, followed promptly by a pendente lite order transferring the children to another custodian during the pendency of a subsequent petition to modify, even though there obviously would be no opportunity for the establishment of the type of stable relationship or environment the McLendon court sought to protect.