THOMPSON, Presiding Judge.
On March 15, 2004, C.M.M. (“the father”) filed a complaint alleging that J.H.M. (“the child”) was a dependent child as that term is defined under § 12-15-1(10), Ala.Code 1975. In his dependency complaint, the father alleged that the child’s maternal grandmother, J.F. (“the grandmother”), had legal custody of the child and that the child’s mother, S.F. (“the mother”), had filed a complaint seeking custody of the child.[1] The father alleged that neither the mother nor the grandmother was capable of parenting the child and that it was in the child’s best interest that custody be awarded to him. The father sought custody of the child and an award of child support from the mother. The record indicates that the grandmother did not oppose an award of custody to the mother, and the record does not indicate that she filed any document in the trial court opposing the father’s dependency complaint. The record also does not indicate whether the mother submitted an opposition to the father’s dependency complaint.
The trial court conducted a hearing at which it received ore tenus evidence. On August 10, 2006, the trial court entered an order awarding custody of the child to the mother and fashioning a visitation schedule for the father. In that order, the trial court ordered the parties to submit information regarding their incomes for the purpose of determining the father’s child-support obligation. Accordingly, the August 10, 2006, order did not constitute a final judgment because it did not determine all the issues in controversy between the parties. See Heaston v. Nabors, 889 So.2d 588, 590 (Ala.Civ.App.2004) (“A final judgment is one that disposes of all the claims and controversies between the parties.”). The father filed a motion, purportedly pursuant to Rule 59(e), Ala. R. Civ. P., which the trial court denied. The fa *977 ther then filed another motion seeking reconsideration of the denial of the original “postjudgment” motion; the trial court denied that motion as well.
On September 8, 2006, the father appealed to this court. While the father’s appeal was pending, this court entered an order temporarily reinvesting the trial court with jurisdiction to enter a final judgment in this matter. On December 28, 2006, the trial court entered a final judgment that incorporated the language from its August 10, 2006, order regarding its custody and visitation awards and also ordered the father to pay $733 per month in child support. The parties subsequently submitted briefs to this court with regard to the December 28, 2006, final judgment.
At the time of the July 26, 2006, ore tenus hearing, the child was 12 years old. The mother also has another child who is in the custody of that child’s father; custody of that child is not at issue in this appeal. The grandmother has had custody of the child since he was approximately 16 months old; the record on appeal does not contain the order granting the grandmother custody. At the time the mother transferred custody of the child to the grandmother, the mother’s lifestyle was unstable, and she was drinking alcohol and abusing illegal drugs. According to the testimony of the mother and the grandmother, the mother was always involved in the child’s life and often lived in the grandmother’s home with the child.
Approximately five or six years before the hearing, the mother stopped using illegal drugs and began to stabilize her life. The mother became very active in the child’s life, and she resumed living with the child and the grandmother. In July 2003, the mother moved from the grandmother’s home. According to the grandmother, the child begged to be allowed to live with the mother, and the grandmother allowed him to do so. The grandmother stated that at that time, as well as at the time of the hearing, she had no concerns about the mother’s ability to properly parent the child. The record indicates that the mother and the grandmother consulted an attorney to formalize the custody arrangement they were proposing but that there was a delay of several months in the actual filing of the mother’s complaint for custody of the child. After the mother filed her complaint for custody, the father filed his dependency complaint.
The mother has worked for a local automobile dealership for approximately three years. A condition of employment at that dealership is submitting to random drug-screen tests, and the mother has never failed a drug-screen test. The mother’s supervisor testified that the mother’s employer was supportive of working mothers and was flexible in allowing the mother and other female employees to take care of the needs of their families. Before these proceedings were initiated, the child often stayed at the father’s home after school until the mother picked him up after work; however, after the father filed his dependency complaint, the child began staying after school with the mother at her place of employment. In the months before the hearing, the child, who was then 12 years old, began staying alone at the mother’s home after school and waiting for the mother to return from work. Neighbors with whom the mother and the child share a close relationship watched out for the child until the mother returned from work. Those same neighbors were keeping an eye on the child during the summer months while the child either stayed at the mother’s home or visited the neighbors.
The father presented evidence indicating that, while the child was living with the mother, the child was frequently late for or absent from school. The mother testified *978 that she often had difficulty awaking the child for school. The mother admitted that the child’s frequent lateness to school was wrong, and she stated that she was improving in her efforts to have the child at school on time. The father also alleged that the mother smokes cigarettes around the child and that the child has respiratory problems as a result. The mother did not present any evidence regarding her smoking.
The mother testified that the child had always done well in school until the year before the hearing while this modification proceeding was pending. The mother testified that the child had not had a grade lower than a “C” on his report card. The father believed the child had recently made grades lower than a “C” on his report card for some classes. We note that the father, in his purported postjudgment motions, alleged that the child had received a “D” grade on his report card in some classes, and he submitted some documentation in support of that claim. However, it is not clear that the trial court accepted those documents as evidence or considered them in denying those motions. See J.S.M. v. P.J., 902 So.2d 89, 91 n. 2 (Ala.Civ.App.2004) (this court refused to consider an affidavit submitted in support of a valid postjudgment motion when it was unclear that the trial court had considered that evidence).
The father accused the mother of being involved with or living with a number of different men in the last few years. The mother admitted to dating or having relationships with some men, but not as many as the father alleged. The parties disputed some facts regarding the mother’s relationship with her most recent boyfriend, to whom she was briefly engaged. The father testified that the child hated that boyfriend and that the mother often took the child on overnight trips to Alabaster, the town in which that man lived. The mother testified that she and the child had traveled to visit the boyfriend in Alabaster on only two occasions. The mother stated that she had ended her relationship with the man because she decided that it was in the child’s best interests for her to do so.
The father’s paternity was established when the child was approximately two years old. At that time, the father was awarded visitation with the child, and he was ordered to pay child support. The father had previously unsuccessfully petitioned the court to obtain an award of custody of the child. The record does not clearly indicate when the father initiated that earlier action, but it appears that it was initiated more than five years before the hearing in this matter; in other words, it was initiated before the mother began making significant improvements to her life.
The father testified that the mother and the grandmother had interfered with his visitation with the child, and the mother and the grandmother denied that allegation. The father also testified that the mother’s and the grandmother’s interference with his visitation with the child caused him to stop visiting and paying support for the child for a period of 8 to 12 months. On cross-examination, the father’s testimony regarding that allegation was impeached by his prior deposition testimony, but the father insisted that his memory of the events was better at the time of the hearing than it was at the time of the deposition that had been conducted two years earlier. The father admitted that he does not attempt to contact the child by telephone between his alternate-weekend visitations.
When the child began living with the mother, the father began making his child-support payments to the mother rather than to the grandmother. At the hearing, *979 the father testified that he was current on his child-support obligation.
The father admitted that he has been convicted on a charge of driving under the influence and that he was arrested on a second charge for that offense. The father has also been arrested on domestic-violence charges.
The father is currently married to his third wife (“the wife”). The father has custody of a child from his first marriage, and the wife has custody of three children from a previous marriage. The father and the wife testified that the child has a good relationship with the other children in their household and that he enjoys family activities when he visits. The father is employed and his wife works in the home rearing their children. In recent years, the father has become more involved in the child’s life, especially in attending sporting events in which the child participates. The father and his wife often assist the child with homework and school projects.
The mother and the grandmother expressed concern that the father often criticized or belittled the child; they stated that the father had called the child names such as “sissy.” The father denied calling the child names. However, the father believed the child was “almost a hypochondriac.” The father acknowledged that he wanted the child to be tougher and that he was concerned that other children would pick on or bully the child. The father also believed that the child’s receiving medication “for every little old sniffle” could later lead to an addiction to illegal substances; the father explained that he was “sure that that is how dependency is started, just by regular drugs, abusing regular drugs. Then you move on to other drugs.”
When asked why he believed that he should be awarded custody of the child, the father indicated that he did not approve of the mother’s relationship with the child. The father alleged that the mother acted more like a friend to the child than a parent. The father also stated that his home offered the child stability and routine, as well as a family.
The parties made a number of other allegations with regard to each other’s parenting abilities and habits; no useful purpose would be served by setting forth all of those allegations in detail. In addition, both parties presented the testimony of several character witnesses, all of whom testified that the parent for whom they were testifying had a good relationship with the child and seemed to be a fit parent. During the hearing, the trial court, without objection from either party, conducted an in camera interview with the child; that interview was not transcribed for the record on appeal.
On appeal, the father first challenges the trial court’s custody award. In this case, prior court orders have awarded custody of the child to the grandmother rather than to either of the parents. When a parent has voluntarily relinquished custody of a child, or when a court order removes custody from a parent to a nonparent, the parent must meet the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), in order to regain custody of the child. Ex parte Terry, 494 So.2d 628, 631 (Ala.1986). The McLendon standard requires that the party seeking to modify custody demonstrate that “ ‘material changes affecting the child’s welfare since the most recent [custody judgment] demonstrate that custody should be [altered] to promote the child’s best interests[ and that t]he positive good brought about by the modification ... more than offset[s] the inherently disruptive effect caused by uprooting the child.’ ” Ex parte McLendon, 455 So.2d at 865 (quoting *980 Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App.1976)).
The father contends on appeal that the mother failed to meet the standard set forth in Ex parte McLendon, supra, but that he did meet that standard. Accordingly, the father contends that the trial court erred in awarding custody to the mother rather than to him. We note that in reaching its custody determination in its December 28, 2006, judgment, the trial court did not make any findings of fact.
“When this Court reviews a trial court’s child-custody determination that was based upon evidence presented ore ten-us, we presume the trial court’s decision is correct: ‘ “A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong....” ’ Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993) (citations omitted). This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. ‘In child custody cases especially, the perception of an attentive trial judge is of great importance.’ Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981). In regard to custody determinations, this Court has also stated: ‘It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’ Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).”
Ex parte Fann, 810 So.2d 631, 633 (Ala.2001).
Since the time of the most recent custody judgment, which appears to have been entered on the father’s earlier unsuccessful action seeking custody, the mother has stabilized her life and stopped using illegal drugs. The mother and the grandmother testified at length regarding the mother’s involvement in the child’s life in the last five to six years. The mother is employed and maintains her own home. The grandmother fully supported the mother’s complaint for custody.
The father also maintains employment and a stable home with his new family. He is involved in the child’s activities and assists the child with school projects. The father alleges that he should be granted custody of the child because, he argues, the mother is more like a friend to the child than a parent. He also criticizes the mother’s relationships with men; however, at the time of the hearing, the mother had terminated a relationship because she believed it was in the child’s best interests to do so.
The record establishes that there have been material changes in circumstances that necessitate a custody modification. The grandmother, who previously had custody pursuant to a court order, has not opposed the parties’ claims seeking custody of the child. The record clearly demonstrates that each parent loves the child and that each has a good relationship with the child. The mother has demonstrated some lapses in judgment, perhaps in her romantic relationships and definitely with regard to the child’s frequent lateness to school. However, it is clear that the mother has substantially altered her life in the five years before the hearing in this matter. The evidence supports a conclusion that the mother is now capable of properly parenting the child.
*981 The record does not indicate the nature of the father’s circumstances at the time of the earlier custody proceedings in which the father unsuccessfully petitioned for custody of the child. Therefore, it is not clear to this court the extent of any changes in the father’s circumstances since the most recent custody judgment, which denied his earlier petition for custody. See Ex parte McLendon, 455 So.2d at 865 (“ ‘[T]he party seeking modification [must] prove to the court’s satisfaction that material changes affecting the child’s welfare since the most recent [judgment] demonstrate that custody should be disturbed to promote the child’s best interests.’ ” (emphasis added)). It is the responsibility of the father, as the appellant, to ensure that the record on appeal contains sufficient evidence on that issue to warrant a reversal of the trial court’s judgment. Goree v. Shirley, 765 So.2d 661, 662 (Ala.Civ.App.2000).
After carefully considering the evidence in the record, we conclude that the record supports the conclusion that the mother has met the McLendon standard. Accordingly, we reject the father’s argument that the trial court’s implicit determination that the mother had met that standard was not supported by the evidence. Further, even assuming that we agree with the father that he also presented sufficient evidence to meet the McLendon standard, the trial court still had to determine custody as between the mother and the father.[2] This court must afford a presumption of correctness to the trial court’s factual determinations that resulted in its custody determination. Ex parte Fann, supra. Further, we must assume that the evidence the trial court received during its in camera interview with the child also supports its custody determination. See Hughes v. Hughes, 685 So.2d 755, 757 (Ala.Civ.App.1996); Reuter v. Neese, 586 So.2d 232, 235 (Ala.Civ.App.1991). Accordingly, we cannot say that the father has demonstrated that the trial court erred in reaching its custody determination.
The father also argues on appeal that the trial court erred in failing to conduct a hearing on what he characterizes as his Rule 59(e), Ala. R. Civ. P., “post-judgment motion.” Rule 59(g), Ala. R. Civ. P., requires that motions filed pursuant to Rule 59 “shall not be ruled upon until the parties have had opportunity to be heard thereon.” We note that
“[o]ur Supreme Court has established that
“ ‘the denial of a postjudgment motion without a hearing thereon is harmless error, where (1) there is either no probable merit in the grounds asserted in the motion, or (2) the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.’ ”
Bell v. Greer, 853 So.2d 1015, 1019 (Ala.Civ.App.2003) (quoting Historic Blakely Auth. v. Williams, 675 So.2d 350, 352 (Ala.1995)).
As already indicated earlier in this opinion, the father filed two motions, purportedly pursuant to Rule 59(e), after the entry of the August 10, 2006, order. However, both of those motions were filed before the entry of the December 28, *982 2006, final judgment in this matter. A valid Rule 59 motion may only be filed in regard to a final judgment. Ex parte Troutman Sanders, LLP, 866 So.2d 547, 549 (Ala.2003) (“By its express terms, Rule 59(e) applies only where there is a ‘judgment.’ ”); Malone v. Gainey, 726 So.2d 725, 725 n. 2 (Ala.Civ.App.1999) (“[A] Rule 59 motion may be made only in reference to a final judgment or order.”). The father’s two purported postjudgment motions, because they were filed in reference to a nonfinal judgment, were not true Rule 59(e) motions. Accordingly, we conclude that there is no merit to the father’s argument that the trial court was required, pursuant to Rule 59(g), to conduct a hearing on those motions.
As a final issue on appeal, the father challenges the trial court’s child-support award of $733 per month. Specifically, the father argues that the record does not indicate that the trial court utilized the child-support forms required by Rule 32(E), Ala. R. Jud. Admin., which governs the establishment of a child-support award, in reaching its child-support determination. Rule 32(E) requires that the parties and the trial court submit the standardized child-support forms set forth in Rule 32. Martin v. Martin, 637 So.2d 901 (Ala.Civ.App.1994).
In this case, the father submitted one of the required child-support forms, and the mother failed to submit those forms to the trial court. In reaching its judgment, the trial court failed to include a CS-42 form indicating the manner in which it calculated child support.
Both parties did submit some evidence to the trial court regarding their incomes and the cost of providing health insurance for the child. Using the evidence submitted by the parties, this court attempted to determine or reconstruct the manner in which the trial court reached its child-support award. This court’s calculations resulted in child-support awards close to the amount awarded by the trial court. However, this court was unable to determine precisely the manner in which the trial court calculated its child-support award. Accordingly, we must reverse the judgment as to child support and remand the cause for the trial court to conduct further proceedings in compliance with Rule 32(E), Ala. R. Jud. Admin.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. We note that the mother’s complaint seeking custody is not included in the record on appeal.

. The parties have not presented to this court an argument pertaining to the standard to be applied to a custody determination between the two of them in the event the court determined that each of them had met the McLen-don standard as against the grandmother. In the absence of arguments by the parties interested in the resolution of that issue, this court declines to reach the issue.