MOORE, Judge.
 

 On June 15, 2000, the Autauga Circuit Court (“the trial court”) entered a divorce judgment divorcing Lori Jane Ethridge McCormick (“the mother”) and William Curtis Ethridge (“the father”) and incorporating an agreement entered between the parties. Although a copy of the parties’ divorce judgment is not part of the record
 
 *527
 
 in this appeal, that judgment and its subsequent modifications evidently awarded the parties joint legal custody and awarded the father primary physical custody of the parties’ only child. The judgment also apparently required the mother to pay certain medical expenses for the benefit of the child.
 

 On June 13, 2006, the mother filed a petition to modify the custody provisions of the divorce judgment. Thereafter, the parties filed various motions, none of which concerned the alleged failure of the mother to pay medical expenses. The trial court conducted an ore tenus hearing on the mother’s petition on August 30, 2007, at which, over the objection of the mother, the trial court admitted an itemization of expenses incurred by the father in seeking and obtaining medical treatment for the child. On September 7, 2007, the trial court entered a final judgment denying the mother’s petition and awarding the father $4,282.50 pursuant to the medical-expense provisions of the divorce judgment. Following the denial of her postjudgment motion, the mother timely appealed.
 

 On appeal, the mother argues that the trial court exceeded its discretion in denying her petition; that the trial court failed to apply § 30-3-130 et seq., Ala.Code 1975 (“the Custody and Domestic or Family Abuse Act”), in making its custody determination; and that the trial court erred in allowing the father to present evidence in support of an unpleaded claim for medical expenses and in finding that all of those expenses were recoverable under the divorce judgment.
 

 The Petition for Modification of Custody
 

 After custody has been awarded in a divorce judgment, the noncustodial parent seeking a change of custody must demonstrate (1) “that he or she is a fit custodian”; (2) “that material changes which affect the child’s welfare have occurred”; and (3) “that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.”
 
 Kunkel v. Kunkel,
 
 547 So.2d 555, 560 (Ala.Civ.App.1989) (citing, among other cases,
 
 Ex parte McLendon,
 
 455 So.2d 863, 865-66 (Ala.1984) (setting forth three factors a noncustodial parent must demonstrate in order to modify custody)).
 

 The parties do not appear to be in dispute over the mother’s fitness to parent the child. Although it appears that at the time the 2000 divorce judgment was entered the mother was mired in a substance-abuse problem and agreed to give custody of the child to the father because of that problem, the father does not disagree that she has since overcome that problem, remarried, obtained steady employment, given birth to another child whom she is raising with her current husband, and established a suitable home for her children. The father does not express any disagreement with the trial court’s finding that the mother is “a capable and loving parent who would be a suitable custodian for the child.” However, “[i]t is not enough that the parent show that she has remarried, reformed her lifestyle, and improved her financial position.”
 
 Ex parte McLendon,
 
 455 So.2d at 866. A noncustodial parent must still prove the other two
 
 McLendon
 
 factors.
 
 Id.
 

 The parties are in dispute as to the second
 
 McLendon
 
 factor—whether there have been material changes affecting the child’s welfare since the entry of the 2000 divorce judgment. The mother maintains that, since the parties’ divorce, the father has developed an alcohol problem, has cohabited or engaged in sexual relations with a series of women, and has committed acts of domestic violence, all of which the mother says have adversely affected the welfare
 
 *528
 
 of the child. The father denies that he has an alcohol problem, denies that he committed any acts of “domestic or family abuse,” as that term is defined under § 30-3-130, Ala.Code 1975, and denies that any of his relationships with women have negatively impacted the child.
 

 In its final judgment, the trial court found that the mother “has failed in her substantial burden to show a material change in circumstances which would justify a change in custody in this case.” In particular, the trial court found that
 

 “[although the father has, on occasion and for extended periods of time, had overnight guests of the opposite sex, there is no evidence that these relationships have affected the child to any degree. It is clear from the evidence that this child almost certainly does not recognize or appreciate the existence of any romantic relationship that might exist between his father and others.”
 

 It has been said in past Alabama custody cases that indiscreet heterosexual conduct of a parent may be considered, but only to the extent that the conduct detrimentally affects the child.
 
 See, e.g., Phillips v. Phillips,
 
 622 So.2d 410, 412 (Ala.Civ.App.1993). Whether Alabama continues to adhere to that standard is questionable,
 
 see Ex paite
 
 730 So.2d 1190, 1194 (Ala.1998) (indicating that noncustodial parent did not have to prove harm to child caused by custodial parent’s
 
 homosexual
 
 conduct, but only that change in custody would meet
 
 McLendon
 
 standard); however, the mother does not question the application of that standard. She argues instead that the evidence does not support the trial court’s findings. We disagree.
 

 At trial, the father admitted that he has been in four long-term relationships since his divorce from the mother. He further admitted that he had engaged in sexual relations with his paramours while the child was in the same house. From February 2005 to December 2005, the father allowed his former fiancée and her two children to reside in the house with him and the child without the benefit of marriage. The former fiancée testified that on one occasion the child had entered the father’s bedroom through a door that had been left inadvertently unlocked and had observed the father and the fiancée while engaged in an intimate act. The father testified that he did not believe the child had actually witnessed any sexual activity as alleged. The guardian ad litem for the child testified that she had surveyed the bedroom and had questioned the former fiancée’s version of the events based on the layout of the room.
 

 The record discloses that the child suffers from autism, which renders him unable to communicate verbally. The father testified at length regarding the effects of the autism on the child’s comprehension abilities. The mother somewhat disagreed with the father’s assessment, but she admitted that the mental ability of the child is impaired. The mother called an expert, who estimated that the child’s autism was in the average range. The father testified that if the child had accidentally witnessed any of the father’s sexual conduct, the child would have been unable to understand what he was observing. Because of the child’s inability to normally process information, the father believed that his relationships and his sexual conduct had had no effect on the child, detrimental or otherwise.
 

 The mother actually testified that during the time the father’s former fiancée and her two children had lived with the father and the child, she had noticed an improvement in the child’s social skills. The mother testified that the child’s behavior seemed to worsen after the fiancée left, but that evidence does not tend to prove in
 
 *529
 
 any way that the child was detrimentally affected by the father’s sexual conduct. Other than testifying that she deemed the father’s behavior to be “inappropriate” and that the guardian ad litem preferred that the father not have overnight visits -with persons of the opposite sex, see
 
 C.J.L. v. M.W.B.,
 
 879 So.2d 1169, 1181 (Ala.Civ.App.2003) (“The cases addressing the use of a guardian ad litem make it clear that a trial court may consider, although it is not bound to follow, a recommendation made by a guardian ad item.”), the mother basically presented no evidence indicating that the child had been harmed by the father’s behavior.
 

 In reviewing findings of fact made by a trial court based on conflicting testimony given in an ore tenus child-custody proceeding, this court may reverse a judgment based on those findings only if they are plainly and palpably wrong.
 
 Ex parte H.H.,
 
 830 So.2d 21, 25 (Ala.2002). Because we cannot conclude that the trial court’s factual findings regarding the effects on the child of the father’s heterosexual conduct are “plainly and palpably wrong,” we cannot reverse on that ground.
 

 The trial court did not make specific findings of fact regarding the father’s alleged alcohol problem or domestic-violence episodes or their impact on the child. However, the trial court was not required to make any specific findings of fact on those issues.
 
 Ex parte Fann,
 
 810 So.2d 631, 638-39 (Ala.2001) (holding that trial court is not required to make specific findings of fact regarding alleged domestic abuse under the Custody and Domestic or Family Abuse Act);
 
 Taylor v. Taylor,
 
 387 So.2d 849, 852 (Ala.Civ.App.1980), overruled on other grounds,
 
 Ex parte McLendon, supra
 
 (trial court has no duty under Rule 52(a), Ala. R. Civ. P., to enter specific findings of fact in denying petition to modify custody). “ ‘[Wjhere a trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly en*oneous.’ ”
 
 Ex parte Fann,
 
 810 So.2d at 636 (quoting
 
 Lemon v. Golf Terrace Owners Ass’n,
 
 611 So.2d 263, 265 (Ala.1992)).
 

 The only evidence in the record relating to the father’s alcohol consumption consisted of his denial of more than social and moderate drinking and the deposition testimony of the father’s former fiancée, who claimed the father drank alcohol daily and had, on several occasions, driven while under the influence of alcohol, at least twice with the child in the vehicle. The father denied that he had ever driven under the influence and stated that an incident in which he had swerved one time while driving with the child in his truck and another incident in which he had nearly fallen asleep while driving late at night were both unrelated to alcohol use. The father further testified that, during problems in them relationship, his former fian-cée had threatened to “get even” with him and tell the mother that he had an alcohol problem. In fact, after her relationship with the father completely ended in December 2005, the former fiancée telephoned the mother and informed the mother of her perceptions regarding the father’s alcohol intake.
 

 We must presume that the trial court resolved the conflict in the evidence by concluding that the father had not developed an alcohol problem that materially affected the welfare of the child.
 
 See Fann, supra.
 
 A trial court’s findings of fact in a custody case based on a combination of oral testimony and deposition testimony is afforded a presumption of correctness, and an appellate court cannot disturb those factual findings unless they are
 
 *530
 
 clearly erroneous and against the great weight of the evidence.
 
 See Friedman v. Friedman,
 
 971 So.2d 23, 28 (Ala.2007). Based on the substantial evidence in the record supporting the trial court’s implied finding of fact on the issue of the father’s alcohol consumption, we find no cause for disturbing the trial court’s judgment on this issue.
 

 The Custody and Domestic or Family Abuse Act provides, in pertinent part:
 

 “In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is in the best interest of the child to reside with the parent who is not a perpetrator of domestic or family violence in the location of that parent’s choice, within or outside the state.”
 

 § 30-3-133, Ala.Code 1975. The Act further provides:
 

 “In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child.”
 

 § 30-3-131, Ala.Code 1975. The mother contends that because the evidence shows that the father committed acts of domestic or family violence, the trial court erred in failing to transfer physical custody of the child to her and in maintaining custody with the father.
 

 The father’s former fiancée testified in her deposition that in May 2006, while she was riding home from the hospital with her newborn baby and her other two children in an automobile operated by her mother, the father’s truck rapidly approached the vehicle from behind and forced her mother to take evasive action. The fiancée’s mother also testified by deposition and verified the event and identified the father as the driver of the approaching vehicle. The father testified that he had gone by the former fíancée’s residence that night, but he denied that he had encountered the fiancée or had committed the alleged maneuver. The father also presented evidence indicating that the former fiancée had not mentioned the incident in court pleadings filed shortly after the incident had allegedly occurred.
 

 The father’s former fiancée also testified that on one occasion, when disciplining her teenage son for slamming a door after the boy had reacted “huffily” to a request to take the dog outside, the father had followed the boy outside and had forcefully shoved him in the chest. She also testified that on another occasion, a month or so later, while she and the father were arguing and she was blocking a bathroom doorway, the father had pushed her, causing her to lose her balance and fall over the end of the bed. The guardian ad litem testified that she had been concerned about those allegations but that, after noticing discrepancies between the information she had received from the former fiancée and the former fiancée’s deposition testimony, and after observing the father interact with the child over the course of a long period of time, she felt the allegations had been “somewhat discredited” and she did not believe that the child should be removed from the custody of the father.
 

 Because the trial court did not transfer custody of the child to the mother based
 
 *531
 
 on the alleged acts of domestic or family abuse, we must assume that the trial court found either that the alleged acts of domestic or family violence did not occur, or that the acts did not constitute domestic or family violence, or that the father had rebutted the presumption that custody of the child should be placed with the mother by, among other things, proving that the acts of domestic violence had not negatively impacted the child.
 
 See McClelland v. McClelland,
 
 841 So.2d 1264, 1268 (Ala.Civ.App.2002). Based on our limited standard of review,
 
 see C.M.M. v. S.F.,
 
 975 So.2d 975, 980 (Ala.Civ.App.2007), we conclude that the trial court was authorized to make some or all of those findings in relation to each alleged episode of domestic violence. Therefore, we conclude that the trial court did not commit reversible error by failing to transfer custody of the child to the mother under the Custody and Domestic or Family Abuse Act.
 

 Medical Expenses
 

 During the final hearing, the father introduced an itemization of expenses incurred by him in traveling to Baton Rouge, Louisiana, and Orlando, Florida, to obtain special medical treatment for the child, which expenses were not covered by medical insurance. That itemization included $4,800 in transportation, lodging, and food expenses.
 
 [1]
 
 The mother objected to the introduction of that document and to testimony relating to the document on the ground that the father had failed to plead a claim for those expenses. The father’s attorney replied that the claim had been pleaded. When requested by the court to produce the pleading, the father’s attorney replied that the evidence had been introduced in relation to a contempt petition filed by the father and that, although the claim was not specifically mentioned, the general prayer for relief in the contempt petition adequately notified the mother of the claim. On appeal, the father also points to other motions in which he generally requested any relief to which he was entitled. The trial court allowed the evidence over the mother’s objection.
 

 We agree with the mother that the father did not appropriately plead the issue of the recovery of the expenses. In all the motions and petitions upon which the father relies, he did not once mention he was seeking relief on the basis of the mother’s failure, willful or otherwise, to reimburse him for certain expenses he claimed she owed under the 2000 divorce judgment. However, even though a party has not pleaded a claim prior to trial, a trial court is authorized to treat the pleadings as amended to conform to the evidence under Rule 15(b), Ala. R. Civ. P., if those issues either are tried with the consent of the parties or the trial court determines that “the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party’s action or defense upon the merits.” The issue was obviously not tried with the consent of the parties because the mother objected to the presentation of the claim. Therefore, we review the case to determine whether the trial court exceeded its discretion in allowing evidence of the claim on the second ground contained in Rule 15(b). See
 
 generally Kelton v. Kelton,
 
 729 So.2d 870, 872 (Ala.Civ.App.1999) (applying abuse-of-discretion-standard to trial court’s rulings regarding amendment to conform to the evidence).
 

 
 *532
 
 In hex- appellate brief, the mother argues that she was prejudiced by the trial court’s ruling allowing proof of the father’s claim for medical expenses. The mother asserts that she did not conduct any dis-covexy on the issue and, therefore, did not have a meaningful opportunity to cross-examine the father on the documentation supporting that claim. However, at trial and in her postjudgment motion, the mother did not make any argument that she had been prejudiced in that manner or in any other way.
 
 See Scott v. Heard,
 
 497 So.2d 494, 495-96 (Ala.1986) (absent objecting party’s showing of prejudice at trial or in motion for a new trial, trial court did not exceed its discretion in allowing amendment). The plain language of Rule 15 requires the objecting party to “satisfy the coui’t that the admission of [the] evidence would pi'ejudice the
 
 party
 
 in maintaining the party’s ... defense upon the merits.” Moi’eover, we cannot consider ax-guments l'aised for the first time on appeal.
 
 Buford v. Buford,
 
 874 So.2d 562, 567 (Ala.Civ.App.2003). We conclude that the trial court did not exceed its discretion in allowing the father to present his medical-expense claim over the mother’s objection.
 

 In her motion for a new trial, the mother did argue, as she does again on appeal, that the tidal court erred in awarding the father transportation, lodging, and food expenses. The father testified that he considered those costs to be reimbursable under the “medical expenses” provisions of the parties’ divorce judgment. The mother argued that those costs are not recoverable under the “medical expenses” provisions of the divorce judgment. In its final judgment, the trial court found the mother responsible for the expenses “under the current decree.” Unfortunately, we cannot review that ruling because the mother did not include the divorce judgment in the appellate record. We cannot construe a document that is not before us, and, in the absence of that document, we must presume that the trial court correctly interpreted its language to support its judgment. See
 
 McCullough v. McCullough,
 
 411 So.2d 807, 808 (Ala.Civ.App.1982).
 

 For the foregoing reasons, we affirm the judgment of the trial court.
 

 The father’s request for the award of an attorney fee on apjieal is granted in the amount of $2,000. The mother’s request for the award of an attorney fee on appeal is denied.
 

 AFFIRMED.
 

 PITTMAN and BRYAN, JJ., concur.
 

 THOMPSON, P.J., and THOMAS, J., concur in the result, without writings.
 

 [1]
 

 . The itemization also included $3,765 for a medical consultation. The trial court ordered the mother to pay one-half of the total of $8,565. The mother does not object to paying for half of the medical visit, but she objects to paying half of the associated transportation, lodging, and food expenses.